### J. M. MILLER v. WILLIAM E. THAREL.

A made his promissory note payable to B or bearer, as the consideration for the purchase of a tract of land; subsequently the contract as to the sale of the land was rescinded, A giving up B's bond for title, and B returning a paper, purporting to be the note for the purchase of said land, to A, and which A at once destroyed; the paper returned by B to A was not the note B said it was, and, at the time, A believed it to be; afterwards B deposited the said note given by A as above set forth with one C, as collateral security, C having no notice of the recission of the contract concerning the sale of the land. In an action by C against A, to recover the amount due upon the note: *It was held*, that when A gave up to B, his, B's bond to make title to said land, and B gave up to A a paper purporting to be his note, which he destroyed, the liability of A on said note was as much discharged as if he had paid it in money; and further, that C was not entitled to recover in this action.

(*Thigpen* v. *Horne*, 1 Ired. Eq., 20; *Lindsey* v. *Wilson*, 2 Dev. & Bat. Eq., 83; *Moody* v. *Susson*, 2 Ired. Eq., 382; *King* v. *Lindsey*, 3 Ired. Eq. 77, and 7 Ired. Eq., 79, cited and approved.)

CIVIL ACTION upon a bond, tried before SCHENCK, J., at Spring Term, 1876, of MECKLENBURG Superior Court.

In May, 1872, the defendant sold to one Houston a tract of land, for the price of $1,600, of which $300 was paid in cash and Houston gave his note for the balance. A few days thereafter the defendant, becoming dissatisfied, re-purchased the land from Houston for the sum of $1,800, and gave the note sued on to secure the purchase money. At this time defendant surrendered to Houston the note for $1,300 aforesaid and had the amount thereof credited upon the note for $1,800, and took from Houston a bond for title. Some two weeks afterward the defendant and Houston rescinded this contract, the defendant surrendering to Houston the bond for title and Houston surrendering to defendant, as he supposed, the note sued on. This transaction took place about dark. Houston went into his house, got a pocket-book and took therefrom a paper and handed it to

the defendant, saying, "now tear it up." The defendant, thinking it was his note, did tear it up. Before the maturity of the note sued on it was transferred by Houston to the plaintiff under the following circumstances: Miller sold and conveyed to Houston a tract of land for the sum of $1,500, and took his note for the purchase money. At the time of the execution of the conveyance from Miller to Houston, and as a part of the contract, Houston gave Miller certain notes on other persons for a sum exceeding the purchase money as collateral security therefor. Thereafter Houston made payments, reducing the note to the plaintiff to about $800, for which balance he gave Miller a new note, taking up the old one. This $800 note Miller endorsed to the First National Bank and received the money therefor. Some months afterward the note in Bank having been reduced by payments to $525, the plaintiff, at the request of Houston, exchanged the notes held as collateral security for the note sued on.

It was farther in evidence that before the note was transferred to the plaintiff, Houston, without the knowledge or consent of Tharel, the defendant, changed the credit upon the back of said note by erasure from $1,300 to $130.

It is agreed:

1. That the credit should be $1,300.

2. That the plaintiff took the note before maturity and without notice of any equity as between the defendant and Houston, or that Houston was withholding the note fraudulently from Tharel.

3. That the $1,300 was paid in June, 1872, by the surrender of the note Houston gave the defendant.

4. That the amount due upon the note last given by Houston to Miller and endorsed to the Bank was $525, with interest thereupon at 8 per centum since April, 1874, and that Houston has paid the interest only to April, 1874.

This balance has not been paid. The balance due upon the note sued on, principal and interest, was $570.

5. It is admitted that Houston is in bankruptcy.

His Honor being of opinion that the plaintiff was entitled to recover the balance due upon the note after deducting the credit of $1,300, gave judgment accordingly. From this judgment the defendant appealed.

*Dowd*, for appellant.
*Jones & Johnson*, contra.

RODMAN, J. When the contract for the sale of the land by Houston to Tharel was rescinded and Tharel gave up to Houston the bond for title which Houston had made to him, and received from Houston a paper which Houston said and Tharel believed was the note now sued on, and Tharel destroyed that paper, the liability of Tharel on the note was as much discharged as if he had paid it in money. The case is the same in effect as if he had received the note and put it in his pocket, from which it was afterwards stolen, and the same as if he had received and torn it in pieces and thrown them away and the pieces had been afterwards picked up and so artfully put together that the tearing could not be detected. It must be concluded that *at that time* he was under no legal or equitable liability by virtue of the note to any one.

It then only remains to consider whether such liability subsequently arose, by reason of the transfer of the note by Houston to the plaintiff under the circumstances stated in the case. The note was *under seal* and was payable to Houston *or bearer*. Notwithstanding this, it is to be regarded so far as its negotiability is concerned, and its liability to be governed by the commercial law applicable to promissory notes, as if it were a promissory note not under seal, and payable to a payee or order. The act of Assembly, Rev.

Code, chap. 13, sec, 1, (Bat. Rev., chap. 10, sec. 1,) enacts in substance : " All notes signed by any person   *   *   *   * whereby such person   *   *   *   *   shall promise to pay any person   *   *   *   *   the money mentioned in such note, shall be construed to be by virtue thereof due and payable to such person   *   *   *   *   to whom the same is made payable, and the person   *   *   *   *   to whom such money is payable, may maintain an action for the same as they might upon inland bills of exchange : and the same, as likewise all *bonds*, bills and notes for *money, with or without seal, and expressed or not to be payable to order*, or for value received, *may be assignable over in like manner as inland bills of exchange are by custom of merchants in England ;* and the person *   *   *   *   to whom such promissory note, bill, bond or sealed note is assigned or endorsed may maintain an action against the person   *   *   *   *   who shall have signed such promissory note, &c., or any who shall have endorsed the same, as in cases of inland bills of exchange ; *Provided,*" &c.

It is conceded that Houston transferred the note to the plaintiff for a valuable consideration, before its maturity, in the usual course of business, and without actual notice, or anything from which notice would be implied, of any defence to it. If Houston had *endorsed* the note to the plaintiff at the time of such transfer, he would thereby have passed the legal title according to the law merchant, and the plaintiff's right would probably have been good against the maker by whose misfortune or negligence it had been permitted to remain in the hands of the payee after it had been paid. We say *probably*, because it is not necessary to decide the question. The note sued on was not endorsed to the plaintiff, but was assigned to him by an oral contract. It is true that under this assignment, by virtue of our recent legislation (C. C. P., sec. 55,) the assignee may sue in our Courts in his own name as an equitable assignee or *cestui*

*que trust,* could formerly have done in equity; but he does not acquire by such an assignment the peculiar rights by which the law merchant, founded on the policy of promoting the circulation of promissory notes, attach to an *endorsee* of each paper. All the authorities from Parsons on Bills and Notes, cited by the learned counsel for the plaintiff, to sustain the proposition that a holder of a promissory note, taken under the circumstances stated, can recover against the maker, notwithstanding any equitable or other defence, such as payment before maturity he may have, apply only to holders who hold by an assignment recognized by the law merchant, viz: an endorsee. The distinction between a title by assignment and by endorsement is stated, but not as clearly as it might be, in 2 Pars. Notes & Bills, 52. It is also made in *Thigpen* v. *Horne,* 1 Ired. Eq., 20; *Lindsay* v. *Wilson,* 2 Dev. & Bat. Eq. 85.

The case of *Whistler* v. *Forster,* 14 C. B., 248, (108 E. C. L. R.,) which probably escaped the attention of Mr. Parsons, is in point and is decisive of the question. The defendant drew the check sued on before the 3d of October, and handed it to Griffiths without any other consideration than a promise to furnish funds to take it up, which he failed to perform. On the 3rd of October Griffiths gave the check to plaintiff for value, but did not then endorse it. Afterwards he did. At the time the plaintiff received the check he had no notice of the way in which Griffiths had obtained it, but at the time of the endorsement he had. The judgment was for the defendant. The observations of WILLIS, J. are so clear that I extract from them :

"The general rule of law is undoubted that no one can transfer a better title than he himself possesses. *Nemo dat quod non habet.* To this there are some exceptions ; one of which arises out of the law merchant as to negotiable instruments.    *    *    *    *    This rule, however, is only intended to favor transfers in the ordinary and usual manner

whereby a title is acquired according to the law merchant, and not to a transfer which is valid in equity according to the doctrine respecting the assignment of choses in action, now indeed recognized, and, in many instances enforced by Courts of law ; and it is, therefore, clear that in order to acquire the benefit of this rule, the holder of the bill must, if it be payable to order, obtain an endorsement, and that he is affected by notice of fraud received before he does so. Until he does so he is merely in the position of the assignee of an ordinary chose in action, and has no better right than his assignor." To the same effect is *Haskill* v. *Mitchell*, 53 Me., 468.

The right of the plaintiff to recover if it has any foundation at all, must stand not on his having the legal title, or on any principle of mercantile law, but on his having some equity which makes it unconscientious in the defendant to refuse payment. It is said that such an equity arises out of the fact that the defendant, by his negligence, permitted the note to exist and to remain in the hands of Houston after it had been discharged by payment, and thus enabled Houston to commit a fraud on the plaintiff; and that the maxim applies, that where one of two innocent persons must suffer by the fraud of another, he must be the victim whose negligence enabled that other to commit the fraud. The rule is not disputed, but probably it will be found to be confined in its application to cases in which the defendant is guilty of some complicity in the fraud, or where, by his negligence, he has enabled the person committing the fraud to pass a legal right to the plaintiff. In this last case the maxim would apply that where equities are equal the legal title will prevail. But where no legal title passed, the case would come under the maxim that where the equities are equal the prior equity prevails. The authorities to this effect are very numerous. In *Turton* v. *Benson*, 1 P. Wms., 496, the payee of an unnegotiable bond assigned it to one of his creditors as a

security, and it was held that the maker could avail himself of an equitable defence. The Master of the Rolls said: "Supposing a man should assign over a satisfied bond, the assignee could not set up this bond in equity, which being satisfied before, could receive no new force from the assignment." On appeal Lord Chancellor PARKER considered all the arguments which could be used by the plaintiff in this case, considering him as a mere assignee, and confirmed the decree.

See 2 vol., 2 part of Leading Cases in Eq.; Note to *Royall* v. *Rowles,* 218–36; *Mordy* v. *Sutton,* 2 Ired. Eq., 382; *King* v. *Lindsay,* 3 Ired. Eq., 77; 7 Ired. Eq., 79.

We think there was error in the judgment below.

PER CURIAM. Judgment reversed, and judgment that defendant go without day and recover his costs in this Court.