TYSON v. JOYNER.

(Filed September 19, 1905).

*Negotiable Instruments—Endorsements—Equitable Defenses—Evidence—Instructions.*

1. In an action on a note, it is error to hold that the mere introduction of the note, with the name of an endorsee written on the back, is evidence of its endorsement by such endorsee, so as to vest the legal title in the plaintiff and cut off any defenses against the endorsee, as the signature of the endorsers, where endorsement is required to vest the legal title, must be proved.

2. In an action on a note, the mere introduction of the note raises a presumption that the holder is only the equitable owner, and it is subject to any equities or other defenses of the maker against prior holders.

3. A note payable to order must be specially endorsed by the payee (and prior endorsees, if any,) to the holder or at least in blank to make him its legal owner and the *bona fide* holder of a title good against prior equities of which he is not shown to have had notice.

4. An instrument payable to bearer can be negotiated by delivery and consequently no endorsement is required.

5. Where a note is endorsed in blank, the holder has the authority to make it payable to himself or to any other person by filling up the blank over the signature, and this may be done at, or before, the trial.

6. Where, in an action on a note, the plaintiff had proven only an equitable title thereto, an instruction was erroneous which cut off matters of defense existing between the defendant (maker) and an endorsee.

Action by M. E. Tyson against J. H. Joyner, heard by *Judge J. L. Webb* and a jury, at the March Term, 1905, of the Superior Court of Pitt County.

This action was brought to recover on a bond for $200, executed in 1897 by defendant and payable to J. L. Little or order. Defendant alleged, and there was evidence tending to show, that he at the request of his brother, S. V. Joyner, signed the note for the accommodation of the latter, and gave a mortgage to secure it. S. V. Joyner received the amount of the note less the discount. Little did not discount the note or pay any consideration for it, but endorsed it to B. F. Tyson, who, it seems, paid the money to S. V. Joyner. Plaintiff at the trial introduced the note and rested. The name of B. F. Tyson was endorsed on the note, but there was no proof of the signature other than the production of the note by plaintiff. Defendants objected to this as evidence of the endorsement of the note by Tyson. The objection was overruled and he excepted. Endorsement of the note by B. F. Tyson was alleged in the complaint and denied in the answer.

Defendant further alleged that Tyson, who was commissioner to sell certain land, had agreed at the time the note was executed to pay it out of that part of the proceeds of the sale which would go to defendant in satisfaction of a judgment held by him, and which was a lien on the land, and he

TYSON *v.* JOYNER.

afterwards collected more than enough for that purpose. Defendant relied upon this agreement and the receipt of the money by Tyson as a payment or satisfaction of the debt, or at least as a set-off or counterclaim.

The issues and answers thereto were as follows: 1. Is the note declared on the property of the plaintiff, M. E. Tyson? Ans. Yes. 2. In what amount, if any, is the defendant, J. H. Joyner, indebted to the plaintiff? Ans. $200 with interest from February 12, 1897. The court charged the jury that if they believed the evidence they should answer the issues as above indicated. From a judgment for the plaintiff, the defendant appealed.

*Fleming & Moore* for the plaintiff.
*Skinner & Whedbee* for the defendant.

WALKER, J., after stating the case: There was much argument as to whether the note or bond had been duly executed, that is, delivered, as Little did not accept it nor advance any money on it, but it is not necessary to discuss this matter as we think the defendant had virtually admitted its execution by the form of his answer, and the case was not tried below upon the theory that the note was not a completed instrument when it passed into the hands of Little and then by endorsement to Tyson. The only questions presented there related to the character of plaintiff's ownership of the note and the validity of defendant's plea of payment or counterclaim.

The court erred in holding that the mere introduction of the note was evidence of its endorsement by Tyson, so as to vest the legal title in plaintiff and cut off any defenses good against Tyson. It is very true, as contended by counsel, that the introduction of the note by plaintiff raised the presumption that she was its owner, but only the equitable owner or assignee, and it was subject in her hands to any equities or other defenses of the maker against prior holders. The note

must have been endorsed specially to her, or at least in blank, to justify the claim that she is its legal owner, and the *bona fide* holder of a title good against prior equities of which she is not shown to have had notice. It was necessary, therefore, to show such an endorsement in order to defeat any equity the defendant may have against B. F. Tyson." Referring to this doctrine, *Harlan, J.,* in *Osgood v. Artt,* 17 Fed. Rep., 575, says: "It is a settled doctrine of the law-merchant that the *bona fide* purchaser for value of negotiable paper, payable to order, if it be endorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee. But it is equally well settled that the purchaser, if the paper be delivered to him without endorsement, takes by the law-merchant only the rights which the payee has, and therefore takes subject to any defense the payor may rightfully assert as against the payee. The purchaser in such case becomes only the equitable owner of the claim or debt evidenced by the negotiable security, and in the absence of defense by the payor may demand and receive the amount due, and, if not paid, sue for its recovery in the name of the payee, or in his own name when so authorized by the local law." In *Trust Co. v. Bank,* 101 U. S., 68, the court says: "The contract cannot therefore be converted into an endorsement or an assignment. And if it could be treated as an assignment of the note, it would not cut off the defenses of the maker. Such an effect results only from a transfer according to the law-merchant, that is, from an endorsement. An assignee stands in the place of his assignor and takes simply an assignor's rights, but an endorsement creates a new and collateral contract." In *Lyon v. Bank,* 85 Fed. Rep., 120, it is held that a mere assignee of a promissory note, like an assignee of any other chose in action, takes his title subject to all equities and defenses which exist between the assignor and the other parties to the instrument, but an endorsee for value without notice before maturity

takes the title to such a note, according to the custom of merchants and the now established law of the land, free from all such equities and defenses. See also Tiedeman on Commercial Paper, sections 246 and 247. The same principle is well stated and illustrated by *Rodman, J.,* in the leading case of *Miller v. Tharel,* 75 N. C., 148, which has been followed in numerous cases by this court. *Spence v. Tapscott,* 93 N. C., 246; *Lewis v. Long,* 102 N. C., 206; *Jenkins v. Wilkinson,* 113 N. C., 532; *Christian v. Parrott,* 114 N. C., 215; *Bresee v. Crumpton,* 121 N. C., 122. An instrument payable to bearer can be negotiated by delivery, and consequently no endorsement is required. Norton on Bills and Notes, section 58; *Bresee v. Crumpton, supra.* "When, however, a bill or note unendorsed by the payee or endorsed by the payee specially and unendorsed by his endorsee, is in the possession of another person, the question whether or not its bare possession is evidence of his right to demand payment, is of a different character. Without the endorsement of the payee or special endorsee, such possession would clearly not entitle the holder to the privileges of a *bona fide* holder for value, as, at best, he would only hold the equitable title to the instrument and could not sue at law upon it as a ground of action." 1 Daniel Neg. Inst. (5th Ed.), section 574. The signatures of endorsers, where endorsement is required to vest the legal title, must be proved. Norton on Bills and Notes, 331. In the case of an assignment of a bill or note, which transfers only the equitable ownership, as distinguished from an endorsement according to the law-merchant, which transfers the legal title, the equitable owner being the party in interest may now sue in his own name, Code, section 177, and he may recover subject to prior equities. *Spencer v. Tapscott* and *Bresee v. Crumpton, supra.* When it is said in the cases that "there is a *prima facie* presumption of law in favor of every holder of negotiable paper to the extent that he is the owner of it, that he took it for value and before dis-

honor and in the regular course of business," it will be found that reference is made to a holder by endorsement or to an instrument which, under the law-merchant, was not required to be endorsed, but which was negotiable by delivery." The expression was used in *Treadwell v. Blount,* 86 N. C., 33, cited by plaintiff's counsel, but in that case the note was endorsed and the signature of the endorser was proved.

It is familiar learning that, where a note is endorsed in blank, the holder has the authority to make it payable to himself or to any other person by filling up the blank over the signature, and this may be done at or before the trial. *Johnson v. Hooker,* 47 N. C., 29; *Lilly v. Baker,* 88 N. C., 151. It then becomes a special endorsement. In the case last cited, this court reversed the judgment below, upon the ground that the endorsement should have been filled up before judgment was rendered, assigning as a reason for its decision that the courts were particular in this respect in order to avoid the danger of notes being subsequently endorsed and again put in circulation. However this may be, the plaintiff in this case may fill up the endorsement, if she is so advised.

The court charged the jury that, if they believed the evidence, they should answer the issues in favor of the plaintiff. We infer from this instruction that the court was of the opinion that the defense or counterclaim, if a valid one, could not prevail against the plaintiff's title to the note. This was an error.

Whether the matters of defense were sufficient to defeat the plaintiff's recovery, we are unable to determine, as the evidence is not all one way and required a finding by the jury. Whether the defendant held the judgment in trust for his brother, for whose benefit he executed the note, or for other persons, and, if for his brother, whether the latter assented to the application by Tyson of his share of the proceeds of sale to the payment of the note, are questions to be passed upon by the jury with such others as may arise.

When the facts are found the validity of the defense can be determined. In the present state of the evidence and the case, we cannot decide that question. Besides, it may be that the plaintiff, by proof as to the endorsement of B. F. Tyson, will be able to cut off all alleged defenses to the action, unless the defendant can show affirmatively that she is not a *bona fide* holder of the note. The error in the ruling of the court entitles the defendant to another trial.

New Trial.