The facts are stated in the opinion of the Court.
This action was brought to recover the amount of a note for $499.20, payable in fixed installments to the Equitable Manufacturing Company. There was written, on its back, an indorsement to the plaintiff, but there was no proof introduced by the plaintiff of the genuineness of the indorsement, the court ruling that the production of the note was sufficient to show that the plaintiff was its equitable owner, without any proof that the note had been indorsed in writing to it, as the plaintiff does not claim as an innocent purchaser or a holder in due *Page 138 
course. The note was originally signed by the Boddie-Perry Drug Company, by C. B. Avent, manager. The name of the Boddie-Perry Drug Company was changed to that of the Scroggin Drug Company, the defendant in this case, and the case must be considered with reference to the liability of the defendant to the plaintiff, as if the note had been signed in the name of the Scroggin Drug Company, by C. B. Avent, manager. The execution of the note by the defendant, or its (143) predecessor, was alleged in the complaint and denied in the answer. It was shown that the note had been presented for payment to the defendant, and that payment was refused. This was the substance of the plaintiff's testimony. The defendant moved to nonsuit the plaintiff; the motion was overruled, and the defendant excepted. The defendant thereupon introduced testimony for the purpose of showing that C. B. Avent was not authorized to execute the note in its behalf. The defendant was engaged in the drug business and the note was given in consideration of jewelry and a piano, either sold or consigned to the defendant. The contention of the defendant was, that as these were not articles used in the drug business, it was beyond the scope of the authority of C. B. Avent to execute a note for the same which would impose any liability upon it. We think, though, the evidence tends to show that C. B. Avent was the general manager of the defendant's business, that he was secretary and treasure of the company, and had full authority over and control of its affairs, and more especially it tended to show that the defendant, through its proper officers, had notice of the purchase of the piano and jewelry and failed to repudiate the alleged unauthorized act of Avent, even if it did not ratify the same, with full knowledge of the facts.
As the plaintiff did not allege that it was an innocent holder of the note, but only the equitable owner, it can recover against the maker without showing a written indorsement, and, therefore, the ruling of the court, as to the proof of the indorsement, becomes immaterial. Having produced the note, the plaintiff was entitled to recover upon it as the holder thereof, subject to any defenses which the maker had against the Equitable Manufacturing Company, the original payee. Tyson v. Joyner,139 N.C. 69. The authorities upon this subject are fully collected in the case just cited, and it is unnecessary, therefore, to refer to them more especially, or to discuss the general principle which they have established. Indeed, the doctrine that the production of a promissory note at the trial of an action to recover the amount of it is sufficient proof of the plaintiff's ownership, is too well settled to be now questioned. It is very true that the plaintiff cannot succeed in the cause if the defendant has any valid or equitable defense as between it and the original payee. Tyson v. Joyner, supra. *Page 139 
It is now contended by the defendant that the doctrine which permits the plaintiff to recover upon his equitable ownership of a note, by the production of it at the trial, which is prima facie proof of his ownership, nothing else appearing, applies only to negotiable instruments, and counsel cite Gregg v. Mallett, 111 N.C. 78, to sustain this position; but we do not think that case is in point. Tyson v. Joyner, supra, which we have already cited, distinctly holds that the production of a note (144) entitles the plaintiff to recover as its equitable owner, but does not cut off any defense as between the original parties, which can only be done by written indorsement, where the note is payable to order. The headnote in that case, by the former reporter, now Judge Biggs, states clearly the principles which we then laid down, and is as follows: "1. In an action on a note, it is error to hold that the mere introduction of the note, with the name of an indorsee written on the back, is evidence of its indorsement by such indorsee, so as to vest the legal title in the plaintiff and cut off any defenses against the indorsee, as the signature of the indorsers, where indorsement is required to vest the legal title, must be proved. 2. In an action on a note the mere introduction of the note raises a presumption that the holder is only the equitable owner, and it is subject to any equities or other defenses of the maker against prior holders. 3. A note payable to order must be specially indorsed by the payee (and prior indorsees, if any) to the holder, or at least in blank, to make him its legal owner and the bona fide holder of a title good against prior equities of which he is not shown to have had notice. 4. An instrument payable to bearer can be negotiated by delivery, and consequently no indorsement is required. 5. Where a note is indorsed in blank, the holder has the authority to make it payable to himself or to any other persons, by filling up the blank over the signature, and this may be done at or before the trial. 6. Where in an action on a note the plaintiff has proved only an equitable title thereto, an instruction was erroneous which cut off matters of defense existing between the defendant (maker) and an indorsee." Tyson v. Joyner, 139 N.C. 69. In Osgood v. Artt, 17 Fed., 575; Judge Harlan says: "It is a settled doctrine of the law-merchant that the bona fide purchaser for value of negotiable paper, payable to order, if it be indorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee. But it is equally well settled that the purchaser, if the paper be delivered to him without indorsement, takes by the law-merchant only the rights which the payee has, and therefore takes subject to any defense the payor may rightfully assert as against the payee. The purchaser in such case becomes only the equitable owner of the claim or debt evidenced by the negotiable security, and in the absence of defense by the payor may demand and receive the amount due, and, *Page 140 
if not paid, sue for its recovery in the name of the payee, or in his own name when so authorized by the local law."
In Trust Company v. Bank, 101 U.S. 68, it is said: "The (145) contract cannot, therefore be converted into an indorsement or an assignment. If it could be treated as an assignment of the note, it would not cut off the defenses of the maker. Such an effect results only from a transfer according to the law-merchant, that is, from an indorsement. An assignee stands in the place of his assignor and takes simply an assignor's rights; but an indorsement creates a new and collateral contract."
But the other question now under consideration is considered in 1 Daniel Neg. Instr. (5 Ed.), sec. 574, and that able and learned text-writer states the principle thus: "When, however, a bill or note unindorsed by the payee, or indorsed by the payee specially and unindorsed by his indorsee, is in the possession of another person, the question whether or not its bare possession is evidence of his right to demand payment is of a different character. Without the indorsement of the payee or special indorsee, such possession would clearly not entitle the holder to the privileges of a bonafide holder for value, as, at best, he would only hold the equitable title to the instrument, and could not sue at law upon it as a ground of action." Referring to this extract from the treatise of Mr. Daniel, we said, inTyson v. Joyner, supra, at page 73: "The signature of indorsers, where indorsement is required to vest the legal title, must be proved. Norton on Bills and Notes, 331. In the case of an assignment of a bill or note, which transfers only the equitable ownership, as distinguished from an indorsement according to the law-merchant, which transfers the legal title, the equitable owner being the party in interest may now sue in his own name (Code, sec. 177), and he may recover subject to prior equities. Spencer v.Tapscott and Breese v. Crumpton, supra. When it is said in the cases that `there is a prima facie presumption of law in favor of every holder of negotiable paper to the extent that he is the owner of it, that he took it for value and before dishonor and in the regular course of business,' it will be found that reference is made to a holder by indorsement or to an instrument which, under the law-merchant, was not required to be indorsed, but which was negotiable by delivery. The expression was used in Treadwellv. Blount, 86 N.C. 33, cited by plaintiff's counsel; but in that case the note was indorsed and the signature of the indorser was proved."
As to the authority of C. B. Avent to bind the drug company, it is very true, as argued by defendant's counsel, that where a party deals with an agent with limited authority, he must ascertain, at his peril, the extent of his power to act for his principal, and in some cases this doctrine may extend to what are sometimes called general agents, under certain *Page 141 
circumstances. Bank v. Hay, 143 N.C. 326; Swindell v. Latham, (146)145 N.C. 144; Metal Co. v. Durham Co., 145 N.C. 293; 10 Cyc., 940 H. It may also be conceded for the sake of argument and as contended by the defendant's counsel, that a general manager, who is not authorized to do so, either expressly or by implication arising out of the course or conduct of the business of a corporation, or from the nature of the transaction, has no power to execute a negotiable instrument in its name and behalf. 10 Cyc., 929, and Note 93. We said, inBank v. Hay, supra, that, "The power to bind a principal by the making or indorsing of negotiable paper is an important one, not lightly to be inferred. It should be conferred directly, unless by necessary implication the duties of the agent cannot be performed without the exercise of the power, or where, as otherwise expressed, the power is practically indispensable to accomplish the object of the agency, and the person dealing with the agent, subject to the principles heretofore stated, must see to it that his authority is adequate." See, also, Tiffany on Agencies, p. 215, sec. 48; Mechem on Agency (1889), secs. 389-393. While we have referred to this contention of the defendant's counsel, it must not be understood that we think the principle thus alleged by them to be established has any application to this case, for it sufficiently appears that the defendant failed to repudiate the unauthorized act of its agent, if he had no power to act as he did, and so far ratified his act as to become liable for the amount of the note, which is now in suit. It also appears in the case that the defendant, before this action was brought, made a payment on the note and thereby recognized its validity. But however this may be, the case, as to the ratification of the defendant, was properly submitted to the jury upon the evidence, and they have found against the defendant.
We have examined Witz v. Gray, 116 N.C. 48, which is now cited to us by defendant's counsel, and cannot see that it has any bearing upon the question of Avent's authority to execute the note. The plaintiff does not seek to recover upon this note as a holder in due course, or as an innocent purchaser of a negotiable instrument properly indorsed, but simply as the equitable owner of the note, which ownership it has established by producing the note at the trial. If the defendant was liable to the Equitable Manufacturing Company upon the note when it was executed or delivered to that company, it is now liable to the plaintiff upon the evidence in this case, nothing else appearing. The case was correctly tried in the court below, and we must, therefore, affirm the judgment.
No error.
Cited: Steinhilper v. Basnight, 153 N.C. 295; Bank v. R. R., ib., 349. *Page 142 
(147)