The plaintiff sued upon the following note:
$1,000. SANFORD, N.C. 8 July, 1907.
1 September, 1908, for value received, we jointly and severally promise to pay Bauhard Bros., of Martinsville, Ind., or order, one thousand dollars, at the Bank of Sanford, Sanford, N.C. with interest at 6 per *Page 378 
cent per annum, interest payable annually, with attorney's fee and without any relief whatever from valuation of appraisement laws.
C.G. PETTY (and 9 others).
It was alleged that upon the note appeared a credit of $200, dated 8 July, 1907; and that the note was endorsed before maturity and for value to plaintiff by Bauhard Bros., without recourse on them. The defendants, admitting the signing of the note, denied the payment of any amount thereon; also that plaintiff was the owner and that the note was endorsed to him, and that he was a bona fide purchaser for value; and further alleged that the note was fraudulently obtained and issued, in that the agent of the payees had falsely and fraudulently represented that other solvent persons had agreed to sign the same and that the note would not be issued until the signature of such persons were placed thereon; that there had been an entire failure of consideration in that the horse which was to be sold the defendants for the notes, was not as represented and was not delivered, and that the agent of the payees had secretly disappeared with the note in breach of his agreement, to have a meeting of the signees at which the horse was to be accepted and the note delivered. His Honor submitted the following issues:
1. Were the signatures to the note sued on procured by fraud?
2. Did the plaintiff purchase said note in good faith and without notice of any infirmity or defect and before maturity and for value?
3. Are the defendants indebted to the plaintiff, and if so, in what amount?
The jury answered the first issue "Yes," and the second issue (464) "No." Judgment was thereupon rendered against the plaintiff and he appealed to this Court.
It may be conceded that the evidence offered by the defendants was amply sufficient to warrant the jury in making an affirmative response to the first issue; but the note being negotiable, such a finding was not decisive of plaintiff's right to recover. The note possessed all the statutory requirements of negotiability. Sec. 2151 et seq., Revisal. Sec. 2172, Revisal, provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value"; and sec. 2178, Revisal, provides: "An instrument is negotiable when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof." The note sued upon being made payable to Bauhard Bros., or order, endorsement *Page 379 
by them was necessary to transfer the title and give the plaintiffs, as the holder, the benefit of the presumptions of the negotiable instrument act; and proof of such endorsement by the payees was necessary.Tyson v. Joyner, 139 N.C. 69; Mayers v. McRimmon, 140 N.C. 640. The plaintiff offered proof of the endorsement to him by the payees before maturity, and that he was at the time of action begun and since then the owner of and in possession of the note. There was no evidence contradictory of these facts; and upon the evidence it was proper for the trial judge to instruct the jury that if they "found these facts to be as testified to," then to proceed with them as established and the statutory inferences therefrom to the ascertainment of the other facts required. Section 2201, Revisal, declares what constitutes a holder in due course, as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it has previously been dishonored, if such was the fact; (3) that he took it for good faith and value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of (465) the person negotiating it." Section 2208 provides that: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims, acquired the title as a holder in due course." The defendants rely upon the last paragraph of the section just quoted for their relief. They contend that having shown that the title of Bauhard Bros. was defective, and that they transferred the note to the plaintiff in fraud of their rights, the burden was cast upon the plaintiff to show that he acquired the title as a holder in due course. They contend that the evidence of Bauhard was equivalent to an admission by him of knowledge of the fraud practiced upon the defendants in acquiring the note; and that the circumstances under which plaintiff acquired the note were sufficient to lead him, by proper inquiry, to discover the fraud; and that he did not pay value for the note. We are, therefore, brought to a critical examination of the evidence of the circumstances under which plaintiff acquired the note and whether he paid value for it. This evidence comes entirely from plaintiff and his witness, I. J. Bauhard. The plaintiff testified that he bought the note sued upon and another note of the same tenor and same amount, aggregating $1,600, in February, 1908, and that having a carload of 24 or 25 railroad mules, he sold them to Bauhard, receiving the two notes and $1,500 in cash therefor; that he had known Bauhard for three years and had other dealings with him; that he inquired of a man named *Page 380 
Harris, known to him, living in Knoxville, Tenn., where he and I. J. Bauhard also lived at the time, about the defendants; that this party had formerly lived in Henderson, N.C. and upon his statement that the defendants were solvent, he purchased the notes. I. J. Bauhard testified that while he knew that there was trouble about the note and had been notified that defendants would not pay it, he withheld the information from plaintiff, and confirmed the evidence of plaintiff as to the circumstances of the transfer of the note and of the value paid for (466) it. On cross-examination this witness testified: "Q. What was the consideration? A. A bunch of mules for this note and the other note. The face value of the two notes was $1,600. Q. How many mules did you get for these two notes? A. I got a carload and paid him a difference. Q. How much difference? A. I forget; they were cheap mules. Q. You mean by that you transferred to Mr. Myers the two notes of $1,600 and took the mules in payment of the two notes? A. Yes, sir. Q. Did Mr. Myers pay you the difference? A. No. I paid him the difference. They were cheap railroad mules, and I do not recall the amount; we had other transactions mixed up with this one, and I owed him for two or three deals, but he took the notes in at face value, and I sold the mules."
The only testimony offered tending to impeach the transfer of the notes for value by Bauhard to the plaintiff, was the testimony of one of the defendants, who testified that he was the keeper of a livery stable at Sanford, N.C.; that he knew what a second-hand railroad mule was; that it had a definite trade meaning; that it was a mule that had been worked on a railroad until run down and was a poor mule; that he knew the value of such mules at the time of the transfer of the notes to plaintiff, and at that time such mules were worth $40 per head at Sanford, N.C. and less at Knoxville, Tenn.; that while he had not bought such mules at Knoxville, he had traded in them. While we can not say that this evidence was very convincing, it was competent to be submitted to the jury for their consideration in determining whether the plaintiff was a bona fide purchaser for value. The value of this witness' opinion and his interest as a defendant in the result of the trial were before the jury. If this witness correctly estimated the value of the carload of mules, and the jury believed it, then the plaintiff was not a purchaser for value. Both the plaintiff and I. J. Bauhard — one of the payees and the partner who endorsed the note of the plaintiff — were examined as to the particular carload of mules traded for the notes and the other consideration therefor, but neither of them expressed an opinion as to the value of any one of the mules or the carload taken collectively. Their answers were seemingly evasive and lacking in frankness and (467) fullness in a matter so essentially affecting the bona fides of the *Page 381 
transfer. The burden was cast upon the plaintiff, in view of the evidence offered at the trial — that the note was fraudulently obtained and issued — to prove that he was a bona fide purchaser for value. This has been very clearly stated by this Court in the case of Bank v. Fountain,148 N.C. 590, where Mr. Justice Hoke, speaking for the Court, said, in concluding the opinion: "As heretofore stated, when fraud is proved or there is evidence tending to establish it, the burden is on the plaintiff to show he is a bona fide purchaser for value, before maturity and without notice, and the evidence must be considered as affected by that burden. If, when all the facts attendant upon the transaction are shown, there is no fair or reasonable inference to the contrary permissible, the judge should charge the jury, if they believed the evidence, to find for plaintiff, the burden in such case having been clearly rebutted. But the issue itself and the credibility of material evidence relevant to the inquiry is for the jury, and it constitutes reversible error for the Court to decide the question and withdraw its consideration from the jury." This rule does not conflict with our negotiable instrument act, nor does it impose an unjust hardship upon the plaintiff, for as to all the circumstances attendant upon the transfer of the paper, they are peculiarly within the knowledge of the plaintiff and are, as to the defendant, res inter alios acta. The plaintiff has no just cause of complaint that he is required to make a full disclosure of the circumstances of notice and value attending the transfer. If he bought without notice of any infirmity or defect in the validity of the paper or the title of any prior holder and before maturity and for value, his right to recover is assured to him, both by our statute and the decisions of this Court, but it is not the purpose of the law to aid in consummating a fraud by the technical observance of mere forms. If the plaintiff's evidence failed to satisfy the jury as to either of the essentials required to perfect his title, he ought to complain only of his own lack of diligence and his own failure to observe fair dealing. As illustrating the extent to which this Court has gone in endeavoring to enforce our statutes to protect the title of those who deal honestly in the purchase of negotiable paper, it was held in Bank v. Hatcher, 151 N.C. 361, and in Evans v. (468)Freeman, 142 N.C. 61, that an endorsement "without recourse" does not, in law, discredit the paper or even bring it under suspicion, nor does it in any degree affect its negotiability. And in Farthing v.Dark, 111 N.C. 243, approved in Bank v. Hatcher, supra; Carringtonv. Waff, 112 N.C. 121, and Loftin v. Hill, 131 N.C. 111, it is held that "the fact that the negotiator of the note was a stranger and sold it and others for considerably less than their face value, and the other circumstances relied upon by the defendant, was not so suspicious as to put the onus of further inquiry upon the purchasers." While we *Page 382 
think, after an examination of his Honor's charge, in view of the authoritative rulings of this Court, that he might have been more perspicuous and orderly in the arrangement of his charge to the jury, yet the essential matters were properly presented to them for their guidance and we cannot say that there was no evidence legally sufficient to support their verdict.
No error.
Cited: Woods v. Finley, post, 500; Park v. Exum, 156 N.C. 230; Bank v.Branson, 165 N.C. 349; Bank v. Drug Co., 166 N.C. 100; Smathers v.Hotel Co., 168 N.C. 72.