ARMOUR PACKING CO. v. J. DAVIS, Receiver.

*Custom of Banks—Dealings Between Bank and Deposi-*
*tor—Title to Negotiable Instruments—Restricted En-*
*dorsements—Presumption and Proof of Bailment.*

1. A negotiable instrument deposited in a bank, endorsed "for
   collection," remains the property of the depositor, and the
   same rule holds when the written endorsement appears
   unrestricted but, as a matter of fact (evidenced by express
   collateral agreement or a tacit understanding to be reason-
   ably inferred from the course of dealing between the bank
   and its depositor) the instrument is taken by the bank, not
   as a purchase, but for collection simply.

2. The fact that a bank has given a depositor credit for the
   amount of a negotiable instrument, regularly endorsed, is
   not conclusive evidence that the bank had purchased the
   paper and was not a mere bailee thereof.

3. When a bank habitually credits a depositor's account with
   negotiable instruments endorsed to it by such depositor,
   giving permission to the depositor to draw against such
   credits, but charges up to the depositor all such papers as
   are not paid on presentation, or deducts such items from the
   next deposit ; such a course of dealing stamps the transac-
   tion, with reference to the title to instruments so endorsed, as
   being unmistakably a bailment for collection simply, and no
   greater title is vested in the bank.

CIVIL ACTION, tried before *Starbuck*, *J.*, at January
Term, 1896, of NEW HANOVER Superior Court.

The Armour Packing Company, by a motion in the
cause, in the case of *Tate, Treasurer* v. *The Bank of*
*New Hanover*, pending in the superior court of New
Hanover, sought to recover possession of a certain check
by it deposited in the said Bank of New Hanover, before
insolvency, which was unpaid and is now held by the

defendant receiver and by him claimed to be the property of the bank. The check in controversy was deposited by petitioner in the bank on the 16th day of June, 1893, three days before the appointment of a receiver, and is as follows:

"No. 189.                          BALTIMORE, June 13, '93.
          "Drovers and Mechanics National Bank,
"Pay to the order of J. G. W. Cobb, $312.$\frac{31}{100}$, three hundred and twelve and $\frac{31}{100}$ dollars.

                              "E. STENBERGER,
                              "H. STENBERGER, Att'y."

The check at the time of its deposit was endorsed as follows:

"Pay to the order of C. S. McColl.    J. W. G. Cobb."
"Pay to Armour Packing Co., or order.    C. S. McColl."
"Armour Packing Co., by H. J. Bierman, Cas."

The Bank of New Hanover thereupon transmitted the check to the Importers & Traders National Bank of New York, endorsed as follows:

"Pay to Importers & Traders National Bank, or order, for collection for Bank of New Hanover, Wilmington, N. C.

                              "W. L. SMITH, Cashier."

The Importers & Traders National Bank transmitted the check to the National Exchange Bank, at Baltimore, endorsed as follows:

"Pay to National Exchange Bank, Baltimore, or order, for collection for account of Importers & Traders National Bank, New York."

The check was presented for payment upon the drawees named therein at Baltimore, on June 21, 1893, when

payment was refused for want of funds in drawees' hands belonging to the drawer to meet the same, and thereupon the check was protested for non-payment and returned to the defendant, Junius Davis, receiver, as aforesaid, on or about the 26th of June, 1893.

The further facts are contained in the judgment of his Honor, which is in these words :

" This cause came on for trial before *Starbuck, Judge*, at the January Term, 1896, of NEW HANOVER Superior Court. By consent of counsel for both parties a jury trial was waived, and it was agreed that the court should find the facts. The court, upon the testimony and exhibits, finds the following facts :

" At the time of the transaction, hereinafter stated, the petitioner had its principal place of business at Kansas City, Mo. It had a branch business at Wilmington, N. C., under the charge of a local manager. The defendant Bank of New Hanover filed a deed of assignment for benefit of creditors on June 19, 1893, and the defendant, Junius Davis, was appointed receiver.

" Previous to and at the time of the insolvency of the said bank, petitioner kept a deposit account with the said bank ; deposits of money, checks and drafts were made in the said bank from time to time by the manager of petitioner's local business at Wilmington in the name of the plaintiff company. The petitioner, through its home office at Kansas City, drew checks against the deposits so made, its checks usually being for an amount corresponding to the amount of a previous deposit. The manager of the petitioner's said business in Wilmington had no authority to check against the deposits made by him to the credit of the plaintiff company, but the same were subject only to petitioner's check drawn at its home office at Kansas City, and this fact was assented to by the defendant bank.

PACKING COMPANY *v.* DAVIS.

" The course of business between the petitioners and said bank was such that from time to time the petitioners would make deposits of money, checks, drafts and other negotiable paper by simple endorsement, and deposit the same in bank, the deposit slip, containing the items of cash, drafts or checks, being prepared by the petitioner's local manager. The said bank would at the time credit the whole deposit, money, drafts and checks, in the pass-book of the plaintiff's kept with said bank, as one item, one amount; and the deposit so made, including the checks and drafts, would at once be credited by the bank to the account of the petitioners on the books of the bank as cash. There was no express agreement between the petitioners and bank with reference to the passing of title to the paper deposited. The check sued on was deposited with the other paper and money, amounting in all to $3,485, on June 16, 1893. The whole deposit of $3,485 was credited on the pass book of the petitioners as one item, and was at once credited by the bank to the account of the petitioners *as cash* on the books of the bank.

" The said check was indorsed in blank by the petitioners.

" The petitioner at no time overdrew its account.

" The last check of the plaintiff paid by the bank was on the 17th of June for $2,392. This check was against a deposit of a week before of like amount. On the 16th of June the petitioner had to its credit a balance of $6,250. The check in controversy was never drawn against by the petitioners. It was the custom of the said bank, where paper deposited with it was returned unpaid, to charge the same back to the depositor, if such depositor was an out-of-town customer; if such depositor to whom it had been credited was a customer in town, he would give the bank a check for it, if he had money to his credit, or take it off his deposit ticket when making his next deposit. The bank

regarded the petitioner as an in-town customer, and so treated it in their dealings. If paper deposited by petitioner and passed to its credit by the bank was returned unpaid, the bank would immediately notify petitioner, who was the last endorser, and when petitioner's local manager would · make his next deposit (he deposited daily) the amount of such unpaid paper would be deducted from the aggregate of the deposit slip of that day, and the said paper delivered to the local manager. It was also a custom of the bank to mark all paper belonging to it, and payable out of town at sight or on demand, upon the day of deposit, and before sending it in the mail, with the letters " C. I.," indicating Cash Item. The paper so marked was treated as cash. This is not a general custom of banks, but was a custom of the Bank of New Hanover, and done for the purpose of distinguishing paper deposited with them for credit and paper simply left with them for collection. It so stamped paper received by it from petitioners on deposit, and the draft sued on was so stamped. The bank was in the custom of receiving items for collection, as well as items deposited as cash. This stamp of C. I. was used by the bank for its own guidance. Where paper was left with the bank for collection, such paper was not treated by the bank as cash until actually collected, nor put to the credit of the depositor until actually collected. There were several occasions on which deposits were made by plaintiff of paper for collection.

" In these cases, the paper was time paper and not due ; the petitioner deposited them with the bank before maturity, and at maturity, when collected, the proceeds were credited to the petitioner. They were not credited to the petitioner when the deposit was made. The bank, when paper which had been credited was returned unpaid, did not notify all endorsers on such paper, but notified only

PACKING COMPANY *v.* DAVIS.

the depositor to whom it had been credited, who was the last endorser. It was generally understood between the depositors of the bank and the bank that if paper so deposited was not paid the depositor would repay it on its return. The bank looked more to the credit of the depositor than anything else in taking paper for deposit and crediting it as cash. The general customs at the bank were applicable to its dealings with the petitioner.

" The draft sued on was presented for payment upon the drawees named therein at Baltimore, on June 21, 1893, after the insolvency of the defendant bank, when payment was refused, and therefore was protested for non-payment and returned to defendant Junius Davis, receiver. And upon the foregoing facts, it is adjudged by the court that the said check or draft mentioned in the petition herein is not the property of the petitioner, the Armour Packing Company, but is the property of said Junius Davis, as receiver of the Bank of New Hanover. The costs of this petition to be taxed by the clerk, must be paid by said Armour Packing Company."

Petitioner appealed, and assigned as error :

"That his Honor erred in his conclusion of law upon the facts found that the said check is not the property of the petitioner but is the property of the defendant, Davis, as receiver of the Bank of New Hanover."

*Mr. Iredell Meares*, for plaintiff (appellant).

*Messrs. George Rountree* and *P. B. Manning*, for defendant.

CLARK, J.: Had the paper, when deposited by the plaintiff in the bank, been endorsed " for collection," there can be no question that it would have remained the property of the depositor, for the title would not have passed. *Boykin* v. *Bank*, at this Term. Had the paper been col-

lected and the proceeds mingled with the general funds of the bank, even if the paper had been endorsed " for collection," the plaintiff would have been a simple contract creditor with no preference over other creditors. *Bank* v. *Bank*, 115 N. C., 226; *Bank* v. *Davis*, 114 N. C., 343. The point here presented is different from either of the above, and has elicited some conflict of decision, but it seems now settled by the weight of authority, especially the more recent cases, and it is in accordance with the " reason of the thing," that, while an endorsement "for collection " of a draft or check does not transfer title to the endorsee but merely constitutes him the agent of the endorser, a different result does not follow an unrestricted endorsement, where, though the endorser is credited and the endorsee charged with the amount of such paper, it appears as a fact that the endorsee does not become unconditionally responsible for such amount until the check or draft is actually paid. *Bank* v. *Hubbell*, 117 N. Y., 384 (15 Am. St. Rep., 515). In a very recent case (*In re State Bank*, 45 Am. St. Rep., 454; 56 Minor, 119) the Court says : "There can be no doubt that if a draft or other paper is delivered to a bank for collection, the mere fact that the endorsement of the owner is unrestricted will not, as between him and the bank, make the latter the owner of the property. Neither is it conclusive upon the question of ownership of the paper that before collection the amount of it is credited to the customer's account, against which he has the privilege of drawing by check.......... Such privilege is merely gratuitous if the bank may cancel the credit or charge back the paper to the customer's account when it is not paid by the maker or drawee. *Gites* v. *Perkins*, 9 East., 12 ; *Levi* v. *Bank*, 5 Dill., 104 ; *Balbach* v. *Frelinghuisen*, 15 Fed. Rep., 675." And in a late case in the United States Cir-

cuit Court of Appeals (*Beal* v. *Somerville*, 50 Fed. Rep.,
647) the same principle is affirmed, the Court pointing out
that, though the amount of the paper may be at once
placed to the credit of the depositor with permission to
him to draw against it, yet if the tacit understanding from
the course of dealings between the parties is that, if the
paper is not paid, the amount thereof is to be charged
back to the depositor's account, this is really a bailment
for collection and, as between the depositor and the bank,
the title never passed, it having passed *sub modo* only as
between the bank and the payee. As between the deposi-
tor and the bank, the question whether title passes or not
depends upon whether as a matter of fact the paper was
taken for collection, though not so restricted by an endorse-
ment to that effect, or whether it was taken absolutely as
a purchase or discount. To the same purport are *Balbach*
v. *Frelinghuisen, supra ; Scott* v. *Bank*, 23 N. Y., 289, and
2 Morse on Banks, Sec. 583 c. In the present case it is
found that the tacit agreement between the parties, from
their course of dealings, was that, though the amount was
credited to the depositor and he could draw against it, yet,
if the paper so deposited was not paid on presentation, the
amount thereof was to be charged up to the depositor's
account or taken off his next deposit ticket. This stamps
the transaction as being unmistakably a bailment for col-
lection. As nothing had passed, the fact that the bank
had simply given the depositor credit on its books would
not make the bank a purchaser for value. *Bank* v. *Davis*,
114 N. C., 385, citing *Mann* v. *Bank*, 30 Kan., 412 ;
*Bank* v. *Valentine*, 18 Hun., 416 ; *Bank* v. *Newell*, 71
Miss., 308.

It was further said *In re State Bank, supra :* "Of course
in all such cases the banker, like a factor, has a lien for
advances made on the faith of the paper, and consequently

the claim of the customer may be modified by the state of his account." No such question however arises in this case, the balance of the plaintiff's account, independent of this check, being in its favor at the time of the failure of the bank. Upon the facts found, the check is the property of the plaintiff.

Reversed.