MURCHISON NATIONAL BANK v. DUNN OIL MILLS COMPANY.

(Filed 21 May, 1909.)

1. Negotiable Instruments—Restrictive Endorsements—"For Deposit or Collection"—Intermediate Agents—Notice—Payment Arrested.

A draft or bill transferred to a bank by restrictive endorsement, as "for deposit" or "for collection," is taken and held by the bank as agent for the endorser; and for the purpose indicated, and subject to the right of the endorser to arrest payment or divert the proceeds in the hands of any intermediate or subagent who has taken the paper for like purpose and affected by the restriction.

2. Negotiable Instruments — Restrictive Agreement — Dehors — Notice—Payment Arrested.

A drawer of a draft, ordinarily standing towards subsequent parties as a general endorser, may, by appropriate words appearing on the paper, or by agreement *dehors* the instrument as to persons affected with notice, retain the right to arrest payment.

3. Negotiable Instruments — Restrictive Agreement — Principal and Agent—Holder in Due Course—Drawee and Endorsee—Liability.

When an agent, for collection or deposit of a negotiable instrument (a draft in this case), has acted within the apparent scope of his authority and exceeds his power, so that a holder in due

course acquires the paper for value and without notice of a restrictive agreement between the original parties, the drawer may be held responsible to such holder.

**5. Negotiable Instruments—Holder in Due Course—Purchase—Consideration.**

A bank which acquires a draft by purchase from another bank for an existing indebtedness is a holder for value, such indebtedness constituting value by express provision of the statute (Revisal. sec. 2173).

**6. Negotiable Instruments — Restrictive Agreement — Notice — Evidence—Questions for Jury.**

When a bank to which a draft, appearing on its face to be negotiable, is forwarded by another bank, purchases it for value, without notice of an agreement restricting its negotiation, the drawer may not stop payment of the draft as against the rights of the bank so holding the paper; and when there is conflicting evidence as to whether the purchasing bank acquired without notice, the question is properly submitted to the jury.

ACTION to recover the amount of a draft, tried before *Lyon, J.,* and a jury, at December Term, 1908, of NEW HANOVER.

There was evidence tending to show that, on 4 February, 1904, defendant company drew a draft in words and figures as follows:

"$286.                    DUNN, N. C., 4 February, 1904.

                    DUNN OIL MILLS COMPANY.

Three days sight, pay to the order of Merchants and Farmers Bank, Dunn, N. C., two hundred and eighty-six and 00-100 dollars. Invoice No. 1072. January 13, 1904.

Value received, and charge the same to account of
                    DUNN OIL MILLS COMPANY,
                    McD. HOLLIDAY, *Treasurer.*
*To* C. R. ADAMS & Co., Four Oaks, N. C.   No. 576."

Said draft contained the following added words and endorsement across the end of face: "No protest. Tear this off before presenting." Also on the face, stamped thereon, the following words: "Cash item. Do not hold. If not paid on presentation, return at once." On the back thereof, "Pay to the order of any

bank or banker. The Merchants and Farmers Bank, Dunn, N. C. V. L. Stephens, Cashier." The added entries on the face of the paper were made by plaintiff bank after receipt of same from the Dunn bank.

That this paper was drawn pursuant to a custom and understanding between defendant company and the Merchants and Farmers Bank of Dunn; that amount was to be entered subject to check and charged back in case same was not paid or collected; that this draft, endorsed as stated, was forwarded to plaintiff bank on 4 February, and entered as cash item to credit of Merchants and Farmers Bank subject to check.

There was evidence, on the part of plaintiff, tending to show that, under this endorsement, the plaintiff bank became the owner outright of the draft and the holder of same in due course. There was also evidence, on the part of defendant, tending to show that the draft was forwarded to plaintiff bank for collection, and under an arrangement that same was to be charged back against the Merchants Bank in case same was not paid or collected.

The evidence further tends to show that the Merchants and Farmers Bank, the original payee of the draft, failed, on or about 9 February, 1904, owing the defendant company a large balance—over $6,000—and that at the time this endorsement to plaintiff bank was made, and during the entire period covered by this transaction, the Merchants and Farmers Bank was largely indebted to plaintiff bank, to the amount of some thousand dollars, and was so indebted at the time of the failure; that C. R. Adams & Co., the drawee, was indebted to the defendant to the amount of the draft, and payment of same was stopped by defendant after failure of Merchants and Farmers Bank, and amount was recharged to Adams, on 29 May, 1904.

On issues submitted the jury rendered the following verdict:

1. "Is plaintiff the owner of the draft sued upon?" Answer: "Yes."

2. "What amount, if any, is the defendant indebted to plaintiff on account of draft sued on?" Answer: "Two hundred and eighty-six dollars."

There was judgment on the verdict for plaintiff, and defendant excepted and appealed.

*Rountree & Carr* and *E. K. Bryan* for plaintiff.
*J. C. Clifford, J. D. Bellamy & Son, Woodus Kellum* and *Godwin & Townsend* for defendant.

· HOKE, J., after stating the case: Where a draft or bill is transferred to a bank by restrictive endorsement, as "for deposit" or "for collection," the instrument is taken and held by the bank as agent for the endorser, and for the purpose indicated, and subject to the right of the endorser to arrest payment or divert the proceeds in the hands of any intermediate or subagent who has taken the paper for like purpose and affected by the restriction. *Boykin v. Bank,* 118 N. C., 566; *Bank v. Hubble,* 117 N. Y., 384; *Balback v. Frelinghyser,* 15 Fed., 675; *Tyson & Rawles v. Bank,* 77 Md., 412. And the drawer of a draft, who ordinarily stands towards subsequent parties as a general endorser, may, by appropriate words appearing upon the paper, or by agreement *dehors* the instrument, and as to persons affected with notice, likewise restrict his obligation and retain the right to arrest payment. Eaton and Gilbert on Commercial Paper, p. 405 and note 7. And this right of the endorser, or drawer, is not affected by the fact that the amount of such drafts is usually entered subject to check, where it is shown to be the custom or agreement to charge back such amount against the depositor in case the paper is not paid on presentation, or deduct the same from the next deposit.

This doctrine is illustrated and well sustained in the opinion of this Court in *Packing Co. v. Davis,* 118 N. C., 548, in which it was held as follows:

"1. A negotiable instrument deposited in a bank, endorsed 'for collection,' remains the property of the depositor, and the same rule holds when the written endorsement appears unrestricted, but, as a matter of fact (evidenced by express collateral agreement or a tacit understanding, to be reasonably inferred from the course of dealing between the bank and its depositor) the instrument is taken by the bank, not as a purchase, but for collection simply.

150—46

"2. The fact that a bank has given a depositor credit for the amount of a negotiable instrument, regularly endorsed, is not conclusive evidence that the bank had purchased the paper and was not a mere bailee thereof.

"3. When a bank habitually credits a depositor's account with negotiable instruments endorsed to it by depositor, giving permission to the depositor to draw against such credits, but charges up to the depositor all such papers as are not paid on presentation, or deducts such items from the next deposit, such a course of dealing stamps the transaction, with reference to the title to instruments so endorsed, as being unmistakably a bailment for collection simply, and no greater title is vested in the bank."

Where the restrictive nature of the endorsement appears by proper entry upon the paper, this right of the drawee or endorser, so clearly stated in this opinion, can be made effective in the hands of any holder, and through any number of subsequent endorsements; for, as said by *Knowlton, J.,* in *Bank v. Tube Works,* 151 Mass., 417: "An unbroken succession of such endorsements would indicate that each endorser was acting by direction of the next preceding endorser, who was himself an agent of the owner for whom the collection was to be made."

And where it arises by reason of facts *dehors* the instrument, it can be made available as between the original parties and subsequent endorsees who take for collection only or who take with notice of the original restrictive agreement, unless and until the instrument is acquired by a holder in due course. Where, however, the rights of a restrictive endorser or drawee of a draft must rest in facts *dehors* the instrument, and the draft has been drawn in the usual form for circulation as a negotiable instrument and has been acquired by a "holder in due course," such drawee or endorsee may be held responsible to such holder; for though his agent for collection or deposit, as the case may be, has exceeded his power, he has acted within the apparent scope of his authority; and this on the recognized principle that "when one of two persons must suffer by the fraud or misconduct of another, he first who reposes the confidence or, by his negligent conduct, makes it possible for the loss to occur, must

bear the loss." *Rollins v. Ebbs,* 138 N. C., 140; *Railroad v. Kitchin,* 91 N. C., 39; *Vass v. Riddick,* 89 N. C., 6; and see *Ditch v. Bank,* 79 Md., 192.

In the case before us, and under the principles stated, the right of defendant to arrest the payment of this draft as against the Merchants and Farmers Bank of Dunn is clear. There is also abundant testimony on the part of defendant tending to establish such right against the plaintiff bank, the Murchison National Bank of Wilmington. There was evidence, however, on the part of plaintiff, tending to show that plaintiff bank acquired and holds this draft as purchaser for value and without notice, the existing indebtedness constituting value by express provision of statute. Revisal, 1905, sec. 2173; *Manufacturing Co. v. Summers,* 143 N. C., 103. See evidence of J. V. Grainger, record, p. 18. The case then was properly made to depend on the question thus presented, whether plaintiff was the holder of the draft in due course, and this question the jury have resolved in plaintiff's favor.

Under a full and comprehensive charge, every position available to defendant on the testimony and under these authorities was submitted for consideration, and we find no reversible error in the record.