FIRST NATIONAL BANK OF LUMBERTON v. J. P. BROWN.

(Filed 16 October, 1912.)

1. **Negotiable Instruments—Due Course—Fraud—Burden of Proof.**

     When the defense to an action brought by a holder upon a negotiable note acquired by him in due course, for value, before maturity, is that he had procured the note to be given to the payee by false and fraudulent representations made to the defendant, the burden is on the defendant to show that the transaction was fraudulent, and that the plaintiff knew of the infirmity of the paper at the time he acquired it. Revisal, sec. 2208.

2. **Same—Evidence—Questions of Law—Principal and Agent.**

     The defendant having been requested with glowing representations to purchase shares of stock in an insurance company, sought information from the cashier of the plaintiff bank as to the value of the shares, and was truthfully informed by him that he, himself, had purchased some of these shares, and told of other prominent people who had likewise done so. The defendant purchased some of the shares, and gave his negotiable note therefor, which was subsequently purchased by plaintiff bank, in due course, for value, and before maturity. In plaintiff's action upon the note, the defense was interposed that the defendant had been induced to purchase the shares and give the note upon the plaintiff's fraudulent misrepresentations. The

burden of proof being upon the defendant, it is *Held*, that the evidence was insufficient to show fraud on plaintiff's part, or on the part of its cashier.

APPEAL by defendant from *Peebles, J.,* at April Term, 1912, of ROBESON.

Civil action tried upon certain issues, of which the following is the first:

Did the plaintiff purchase the note described in the complaint for a valuable consideration and before maturity, in good faith and without any knowledge of any fraud in its execution? Answer: Yes.

*McIntyre, Lawrence & Proctor for plaintiff.*
*McLean, Varser & McLean for defendant.*

BROWN, J. Plaintiff seeks to recover upon a promissory note for $750, dated 3 July, 1908, interest from date due 10 December, 1908, signed by defendant, payable to and indorsed by himself.

The defendant pleads that said note was given for stock in the Seminole Security Company; that the stock was worthless, and that he was induced to subscribe to said stock by the false and fraudulent representations of H. M. McAllister, cashier of plaintiff.

There are forty-one assignments of error, thirty-eight of which relate to the rejection and admission of evidence. We have examined them all, and find no error of sufficient importance to necessitate another trial. Very many of the exceptions are taken to rulings which, if erroneous, constitute only harmless error at best.

It is contended that the judge erred in instructing the jury, if they believed the evidence, to answer the first issue "Yes." Taking any view of the evidence, the plaintiff is a holder in due course. Revisal, sec. 2208; *Bank v. Hatcher,* 151 N. C., 359.

The defendant gave the note to Shaw, who discounted it before maturity to the plaintiff for value. Plaintiff issued its certificate of deposit to Shaw for the net sum and paid it.

The burden is then cast upon the defendant to show infirmity in the paper and knowledge upon the part of the plaintiff at

BANK *v.* BROWN.

time the note was discounted of such facts as will make out a case of bad faith upon the part of, the plaintiff in taking the paper. Revisal, sec. 2205; *Bank v. Fountain,* 148 N. C., 590; *Bank v. Burgwyn,* 108 N. C., 62; *Manufacturing Co. v. Summers,* 143 N. C., 102.

Assuming, for argument's sake, that the bank is bound by the acts of its cashier, McAllister, we find no evidence of fraud or bad faith on his part. According to defendant's testimony, he purchased the stock from Edwards & Shaw, the Seminole Company's agents, and gave his note for it. Their representations were of a very glowing promissory character (*Williamson v. Holt,* 147 N. C., 515), such as promoters frequently indulge in when "boosting" their enterprises. *Cash Register v. Townsend,* 137 N. C., 652. According to his own admission, defendant did not rely upon their statements, but asked McAllister's opinion.

The latter gave defendant names of many persons, presidents of banks, cashiers, and others who had invested in the stock, and stated that he had personally subscribed for some of it himself. There is no evidence whatever that the cashier's statements to defendant were false, much less knowingly so.

Even the evidence for defendant shows that they were true. One of the trustees was president of the largest bank in Columbia; another was a bank president and chairman of the State Democratic Executive Committee; another was ex-president of a large woman's college and president of a large printing establishment. The Insurance Commissioner of South Carolina, a witness for defendant, said: "The standing of these parties was the very best financially, socially, and religiously." It was shown that over 150 bankers and business men had indorsed the proposition and that their company had over 1,200 stockholders.

The fact that the Seminole Company was wrecked by its officers six months later is no evidence of bad faith or fraud upon the part of McAllister.

The judgment of the Superior Court is
Affirmed.