THE THIRD NATIONAL BANK OF ST. LOUIS. v.
W. P. EXUM ET ALS.

(Filed 8 October, 1913.)

1. Judicial Notice — Courts' Decisions—Numerous Actions—Banks and Banking—Holder in Due Course—Presumptions.

The courts will take notice from the reported cases that suits of this nature brought in behalf of McLaughlin Brothers on notes

given for the purchase of "imported French ·coach horses" have been very numerous, upon the question of whether the plaintiff bank would become a *bona fide* holder in due course of notes of this character, or take them as collateral.

2. **Banks and Banking—Bills and Notes—Negotiable · Instruments —Irregular Transactions — Presumptive Evidence — Holder in Due Course—Conflicting Evidence—Issues—Trials.**

In an action by the bank to recover of a maker of a note given for an "imported French coach horse," as a holder in due course from the original payee, there was evidence of fraud in the procurement of the note. There was also evidence that the bank had taken over from the payee a large number of like notes, aggregating the sum of $50,000, and that it was customary that these notes, when unpaid, were charged to the payee's account by the bank from moneys he'kept on deposit there, and that such notes were turned over to the payee's attorneys for collection without expense to the bank. A letter was also in evidence,. written by the payee of the note to the plaintiff bank, stating in effect that he would soon see the proper officer of the bank and make an arrangement for starting a special account, or give a demand note to cover such of these notes as were due, and the bank could then collect them for the payee. The cashier of the plaintiff bank testified that the bank had not taken the notes as collateral, but had discounted them in regular course: *Held*, the evidence was conflicting as to whether the bank was the·holder in due course of the note sued on, and raised an issue for the determination of the jury on the questions presented, and the refusal of the judge to accept such issues tendered was reversible error.

3. **Bills and Notes—Negotiable Instruments—Collaterals—Right of Action—Parties.**

One who holds a negotiable note as collateral for the payment of a debt may maintain an action thereon in his own name, but not one who holds "for collection," for the latter is not "the party in interest."

4. **Bills and Notes — Negotiable Instruments—Fraud—Pleadings— Holder in Due Course—Burden of Proof—Trials.**

Where fraud is alleged in the execution of a negotiable note, one claiming to be a holder thereof in due course has the burden to show that he is a *bona fide* purchaser. Revisal, 2208. *Bank v. Brown*, 160 N. C., 23, cited and distinguished.

APPEAL by defendant from *Justice, J.,* at June Term, 1913, of LENOIR.

*Loftin & Dawson and McLean, Varser & McLean for plaintiff.*

*G. V. Cowper and T. C. Wooten for defendants.*

CLARK, C. J. This is another of the numerous actions upon notes executed to McLaughlin Brothers for the purchase of an "imported French coach horse," of which so many have appeared in our reports. At this term, in a case of this kind, *Trust Co. v. Ellen, ante,* 45, we quoted *Winter v. Nobs,* 19, Idaho, at page 28, where that Court took notice from the reported cases that suits of this nature, in behalf of McLaughlin Brothers, were numerous throughout the country.

In this case, the defendant tendered an issue, "Is plaintiff the *bona fide* owner of the note in due course?" The assignment of error on the exception for refusal to submit such issue must be sustained if there was any evidence—and we think there was— to support the issue. Besides the inherent improbability that a bank in St. Louis would buy outright, or take as collateral, the large number of notes of this nature which McLaughlin Brothers were placing with them, signed by distant and unknown parties, as in this State and elsewhere, with the knowledge the bank had of litigation over such notes, there is other evidence for consideration. Among other evidence, there is the letter of 26 September, 1908, from McLaughlin Brothers to the plaintiff bank, in which they say: "The writer will be in St. Louis some time next week, and will make some sort of arrangement and will give you a special account for these due notes, or a demand note, for the amount, and then *you can collect them for us."* The letter of 24 November, 1908, by the attorneys of McLaughlin Brothers to the plaintiff bank, and the letter of 28 November, in reply, show that the litigation in regard to the collection of this note was under the supervision and control of the lawyers for McLaughlin Brothers. There is evidence that a large number of like notes for McLaughlin Brothers were taken over by the bank, amounting to about $50,000 at one time, and that plain-

tiff knew nothing of the makers. It was also in evidence that, under instructions from McLaughlin Brothers, when any of these notes were not paid, the plaintiff sent them to the attorneys of McLaughlin Brothers, as in this case. There is no evidence that the bank has ever paid, or been charged with, any expenses on account of the actions on these notes. McLaughlin Brothers deposited funds in bank and the bank charged back the amount of any of these notes which were not paid. They wrote plaintiff 11 August to charge all costs of collateral to them. It would seem that the understanding was that if a note was not paid the bank was to bring suit in its own name under McLaughlin Brothers' instructions and through their attorneys, and the bank was to look finally to McLaughlin Brothers for the payment of any note which was not collected. One of the firm told a witness a number of times that they were to remain liable on the notes whether protested or not, and they had given the bank instructions not to protest the notes and a general waiver of protest, and that they guaranteed the payment of the notes. It was in evidence that the bank had been doing business with McLaughlin Brothers for a number of years, and knew the nature of their business, and was aware of the abundant litigation arising on their contested notes. The cashier of the bank testified that he did not take their notes as collateral. The bank contends that it discounted them in regular course. It may have done so. But there was evidence sufficient to go to the jury on the issue whether or not the bank was the real owner of the note or whether in truth the bank in effect merely held the note for collection and sued in their own name to cut off the defenses which might have been pleaded had McLaughlin Brothers sued in their own names. It was at the request of McLaughlin Brothers that this and other suits upon similar notes were brought in the name of the bank under the general supervision of the attorneys for McLaughlin Brothers, who agreed to pay the expenses of such action. If the bank in truth held the notes for collection, it could not maintain this action. *Abrams v. Cureton,* 74 N. C., 523, and citations in Anno. Ed.

In *Packing Co. v. Davis,* 118 N. C., 548, it was held: "When a bank habitually credited a depositor's account with negotiable

BANK v. EXUM.

instruments indorsed to it by such depositor, giving permission to the depositor to draw against such credits, but charged up to the depositor all such papers as were not paid on presentation, or deducted them from such deposit, such a course of dealing stamps the transaction with reference to the title to instruments so indorsed as being unmistakably a bailment for collection simply, and no greater title is vested in the bank." To same effect, *Boykin v. Bank,* 118 N. C., 567; *Davis v. Lumber Co.,* 130 N. C., 176; *Cotton Mills v. Weil,* 129 N. C., 552; *Latham v. Spragins,* 162 N. C., 404.

The indorsement of the note was expressly denied, and the court erred in stating to the jury that it was proved, and not denied, that the note went into the hands of the plaintiff before it was due. This point has been recently and fully discussed by *Hoke, J.,* in *Park v. Exum,* 156 N. C., 230, upon facts almost identical with this case.

When there is evidence tending to show fraud in the execution of the note, the burden is thrown upon the plaintiff to show that it was a *bona fide* purchaser, and not upon the defendants to show the negative of that proposition. *Bank v. Fountain,* 148 N. C., 590; *Park v. Exum,* 156 N. C., 231; *Vaughan v. Exum,* 161 N. C., 494; *Bank v. Walser,* 162 N. C., 53; *Trust Co. v. Ellen, ante,* 45.

Revisal, 2208. It is unnecessary to discuss the evidence of fraud in this case, as the above errors entitle the defendants to a new trial, and we only refer to the proposition because it is contended by the counsel for the plaintiff that the above rulings had been overturned by the decision in *Bank v. Brown,* 160 N. C., 23. But reference to this last case will show that there was no evidence tending to show fraud, and therefore the burden was not shifted in that case upon the plaintiff to show a purchase before maturity and without notice of the defect. Revisal, 2208.

New trial.