FIRST NATIONAL BANK OF COLUMBUS, GEORGIA, v. LEON ROCHA-
MORA AND MAX TAUB, PARTNERS, DOING BUSINESS AS THE ASHEVILLE
CANDY COMPANY.

(Filed 12 January, 1927.)

**1. Bills and Notes—Negotiable Instruments—Actions—Parties—Statutes.**

The holder of a negotiable instrument in due course for value may main-
tain an action thereon in his own name as the real party in interest, and
a payment to him is a discharge of the instrument, C. S., 3032; but when
the holder in due course by endorsement is a bank, and has received it
only for collection, action on the instrument must be brought by the
endorser. C. S., 446, 3017, 3018.

**2. Same—Banks and Banking—Agencies for Collection—Principal and
Agent.**

Where a bank receives a negotiable bill of exchange from its depositor,
and the instrument is endorsed to the bank, as in due course, the pre-
sumption raised by the statute is that the bank, among other things,
was a purchaser for value, and a prima facie case is thereby raised
sufficient to take the case to the jury, with the burden of the issue re-
maining with the bank, the plaintiff in the action.

**3. Same—Evidence—Questions for Jury.**

Evidence that the plaintiff bank received from its depositor a bill of
exchange endorsed to it, under the custom of taking such instruments
with the right to receive the depositor's check in the event of nonpayment,
and without any knowledge of or inquiry into the financial responsibility
of the payor, is sufficient evidence to take the case to the jury upon the
question as to whether the bank accepted the instrument for collection
only.

1—193

4. **Instructions—Requests for Instructions—Appeal and Error—Objections and Exceptions.**

> An instruction that in general terms correctly applies the law of the case arising from the evidence, will not be held for reversible error, it being for the appellee to offer a prayer for special instructions going into the particulars complained of, and to except to the refusal of the court to give it.

APPEAL by plaintiff from *Stack, J.,* and a jury, at July Term, 1926, of BUNCOMBE. No error.

This was an action instituted by plaintiff against Leon Rochamora and Max Taub, partners, doing business as the Asheville Candy Company, to recover of defendants the sum of $1,000, alleged to be due on a bill of exchange or trade acceptance given by defendants to Kaufman Brothers, on 25 November, 1924, for the purchase of candy, payable 6 March, 1925. Plaintiff alleged it was endorsed "Kaufman Brothers—Sam Kaufman." The endorsement was denied by defendants.

It was alleged by plaintiff (paragraph 4 of the complaint) : "That after said acceptance and said endorsement, before maturity, and for value, the plaintiff purchased said trade acceptance, and as such owner, forwarded same to Asheville for collection, and payment at maturity, but payment thereof was refused, and the same was on 6 March, 1925, duly protested for nonpayment; that demand has been made for payment, and payment refused, and there is due to the plaintiff the sum of one thousand dollars, with interest thereon from 6 March, 1925, by the defendants."

The defendants answer that the allegations of paragraph 2 of the complaint are untrue, as therein set forth, and are denied. "The defendants admit, however, that they signed a paper-writing substantially similar to that set forth in paragraph 2 of the complaint, but state further that any paper-writing signed by the defendants was signed upon an express agreement between the defendants and Kaufman Brothers, under which agreement the said Kaufman Brothers agreed to give credit to the defendants on said paper-writing for any defect in any goods shipped, and the defendants state that there was a defect in said goods, and that goods were not shipped which had been ordered by the defendants, and that the said Kaufman Brothers shipped other goods, which had not been ordered by the defendants, and are indebted to the defendants in at least the sum of eight hundred dollars ($800), which sum was to be credited on any paper-writing which may have been signed by the defendants under an express agreement in writing between the defendants and the said Kaufman Brothers."

Defendants answer paragraph 4 of the complaint, as follows: "The defendants are informed and believe that the allegations of para-

graph 4 of the complaint are untrue and are denied.  The defendants admit that they have not paid a paper-writing substantially similar to that mentioned in paragraph 2 of the plaintiff's complaint, which was, as the defendants are informed and believe, sent on for collection by Kaufman Brothers and which was owned by Kaufman Brothers at the time it became due, for the reasons hereinbefore set forth.  Defendants expressly deny that they are indebted to the plaintiff in any sum whatsoever." ·

The issues submitted to the jury and their answers thereto were as follows:

"1. Is the plaintiff the owner of the trade acceptance in due course as alleged in the complaint?  Answer: No.

· 2. If so, in what amount, if any, is the defendant indebted to the plaintiff?"

There was a judgment signed in accordance with the verdict and plaintiff assigned numerous errors and appealed to the Supreme Court. The material facts and assignments of error will be considered in the opinion.

*Merrimon, Adams & Adams for plaintiff.*
*Jones, Williams & Jones for defendants.*

CLARKSON, J.  "If you find that the plaintiff bought the paper, that is, in due course, as I have defined that term, and did not take it as an agent for collection, then your answer to the first issue would be 'yes'; if you do not so find, your answer to the first issue would be 'no.'  If as purchaser in due course, if the plaintiff has satisfied you by the greater weight of the evidence of that, your answer to the first issue would be 'yes,' if not, and you find that the bank accepted it as a collecting agent, your answer to the first issue would be 'no.'"  Plaintiff assigns error.  The main controversy hinges around the charge as stated above as incorrect in law, and there was no sufficient evidence to support it.  We think the charge correct, and that there was sufficient evidence to go to the jury to sustain it.

C. S., 3108: "A bill of exchange is an unconditional order in writing, · addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money or order or to bearer."  C. S., 3114.

In the present action the "bill of exchange" or "trade acceptance," was a negotiable instrument.  This is conceded on the record.  *Sherrill v. Trust Co.,* 176 N. C., 591.

The issue submitted to the jury: "Is the plaintiff the owner of the trade acceptance in due course, as alleged in the complaint?" we think

the proper one under the pleadings. The plaintiff alleged that it, in due course, purchased the trade acceptance and as such owner forwarded same to Asheville for collection, etc. The defendants deny that plaintiff purchased the paper-writing, and allege that Kaufman Brothers was the owner at the time it became due and was sent on by them for collection. Defendants expressly deny that they are indebted to plaintiff in any sum.

Brannan's Negotiable Instrument Law, 4 ed. (1926), sec. 51: "The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument." This is the exact language of our C. S., 3032. In construing this section, the learned author, at p. 352, says: "Although The Code requires an action to be brought in the name of the real party in interest, yet under sec. 51, N. I. L., a holder even though he be a holder only for collection, may sue in his own name." And on p. 353: "In *Third Nat. Bank v. Exum,* 163 N. C., 199, 79 S. E., 498, *S. c.,* sec. 37, the Court in saying that an endorsee for collection cannot maintain an action, citing an old case, evidently overlooked secs. 51, 36 and 37 of the N. I. L." C. S., 3017-8; 36 N. I. L. is C. S., 3017; 37 N. I. L. is C. S., 3018.

Under our Code of Civil Procedure, "Every action must be prosecuted in the name of the real party in interest," etc. C. S., 446.

Construing the sections of the Negotiable Instrument Law referred to with the section under Civil Procedure, that says every action *must be prosecuted* in the name of the *real party in interest,* we think C. S., 446, is mandatory and compelling. We think the decision of *Bank v. Exum,* 163 N. C., 199, correct in principle and founded on a just and reasonable interpretation of the statutes applicable and cognate. To say a collecting agency, because it is a bank, can sue in its own name would be to say that any attorney or any kind of collecting agent can likewise enter suit by reason of the agency. We do not think our statute allows this construction as to favoritism. The contrary construction would permit the real owner of the instrument to defeat all equities of the maker by simply turning it over to an agent for collection. "Logic of words should yield to the logic of realities." *Brandeis, J.,* dissenting in *Di Santo v. Penn.,* U. S. Supreme Court opinion, 3 January, 1927.

*Allen, J.,* in *Worth Co. v. Feed Co.,* 172 N. C., 335, speaking to the question involved, says, at p. 341: "The intervening bank was the holder of the draft duly endorsed, and as there is neither allegation nor proof that the title of the feed company, which negotiated the draft, was defective (Rev., sec. 2204), (C. S., 3036), the only question presented by the appeal is whether his Honor correctly held, *as matter of law, that the bank held the draft for collection and not as a purchaser for value.* If it was a *purchaser for value,* the draft became the property of the

bank, and the proceeds could not be attached in the hands of the Murchison Bank as the property of the feed company; but if a *mere collecting agent,* the proceeds would belong to the feed company and be the subject of attachment. (Italics ours.) The holder of a negotiable instrument duly endorsed (and it is not contended that the draft was not negotiable) is, under the statute (Rev., sec. 2201), (C. S., 3033) prima facie a purchaser for value, in good faith, before maturity, and without notice of any defect in the title of the person negotiating it. If the instrument is negotiable, the holder may, upon proof of the endorsement, rest his case, because the statute says, under such conditions and nothing else appearing, that he is a purchaser for value. *Moon v. Simpson,* 170 N. C., 336, and cases cited. In this last case the Court says: 'The burden is upon the holder of a negotiable instrument payable to order, which has been endorsed, to prove the endorsement (*Tyson v. Joyner,* 139 N. C., 69), and when he does so he is deemed prima facie to be a holder in due course (Rev., sec. 2208), (C. S., 3040), that is, he is deemed prima facie to be a purchaser in good faith for value, before maturity, and without notice of any infirmity in the instrument or of any defect in the title of the person negotiating it. Revisal, sec. 2201 (C. S., 3033). He is not required to prove that he paid value for the instrument, as the statute furnishes this evidence for him. The following authorities and others sustain this position. *Mfg. Co. v. Tierney,* 133 N. C., 630; *Evans v. Freeman,* 142 N. C., 61; *Trust Co. v. Bank,* 167 N. C., 261; *Bank v. Roberts,* 168 N. C., 475' "; *Bank v. Felton,* 188 N. C., at p. 386.

In *Worth Co. v. Feed Co., supra,* at p. 342, it is said: "The rule prevails with us, and it is supported by the weight of authority elsewhere, that if a bank discounts a paper and places the amount, less the discount, to the credit of the endorser, with the right to check on it, and reserves the right to charge back the amount if the paper is not paid, by express agreement or one implied from the course of dealing, and not by reason of liability on the endorsement, the bank is an agent for collection and not a purchaser. *Packing Co. v. Davis,* 118 N. C., 548; *Cotton Mills v. Weil,* 129 N. C., 452; *Davis v. Lumber Co.,* 130 N. C., 176; and *Bank v. Exum,* 163 N. C., 202. . . . (p. 343). Was it the mutual understanding and intention that the title should pass unconditionally to the bank, with no right to charge back except by reason of endorsement, or was it the intention of the parties that the title should only pass conditionally, and that credit should be given temporarily for the convenience of the parties, with the right arising by express or implied agreement to charge back? If the first, the bank would be a purchaser for value and the owner; and, if the second, it would be an agent for collection. In passing upon the question of the intention of the parties, it is compe-

tent to consider the course of dealing, the rate of discount, the state of the account, and other relevant circumstances."

The plaintiff contends: (1) That on all the evidence it is entitled to recover on a peremptory instruction in its favor; (2) that it is entitled to recover because the defendant did not introduce evidence of defenses against Kaufman Brothers, the original holders of the paper. We think neither position tenable, under the facts and circumstances of the present action.

"If the bank in truth held the notes for collection, it could not maintain this action. *Abrams v. Cureton,* 74 N. C., p. 523." *Bank v. Exum, supra.* If held for collection, the plaintiff is not the real party in interest under our Statute of Civil Procedure.. *Chapman v. McLawhorn,* 150 N. C., 166; *Martin v. Mask,* 158 N. C., p. 436-442.

In *Finance Co. v. Cotton Mills Co.,* 187 N. C., at p. 237, it is said: "The fact that the officers of the Finance Company testified that its company is the owner of the note, and they purchased it in due course bona fide for value and before maturity, is not conclusive if the Mills Company should show by facts and circumstances to the contrary. The weight of the evidence, pro and con, was for the jury. . . . (p. 239.) All this and other matters of the dealings between the Finance Company and the Truck Company was more than a scintilla of evidence to go to the jury, its weight is for them to determine on this aspect of the case whether the bank is an agent for collection and not a holder or purchaser in due course."

In the present action the bank introduced the trade acceptance, proved its execution by defendants and endorsement by Kaufman Brothers—this made out a prima facie case, which it was entitled to have submitted to the jury, that plaintiff was the holder or purchaser in due course. The defendants contend that from the facts and circumstances of the case and plaintiff's evidence, there was sufficient evidence, more than a scintilla, for the jury to consider and pass on that the plaintiff bank took the trade acceptance merely as an agent for collection and not as a purchaser or holder in due course.

Some of the facts and circumstances relied on by defendants: The following question was asked of and answered by the vice-president of the plaintiff bank: "Q. It was your custom when you took one of these drafts from Kaufman Brothers to credit them with the net amount, and when the acceptance was not paid at maturity, you reserved the right to charge it back to them, didn't you? Answer: Not necessarily; we usually send out and get a check for it, that is when we want them to take it up." The vice-president of the plaintiff bank also testified as follows: "I do not remember making any inquiry as to the financial standing of the Asheville Candy Company before the purchase of the

acceptance, but I looked up their rating afterwards in Dun's and found them to be well rated."

Defendants contend that this evidence is sufficient to show that the bank was not making an outright purchase of the trade acceptance, but was handling it as an agent for collection for the convenience of Kaufman Brothers; that the usual course of dealing between the bank and Kaufman Brothers was to take a paper of this character, collect it if possible, and if the paper for any reason was not paid, to return it to Kaufman Brothers and charge it back or collect it from Kaufman Brothers as a matter of course, not by reason of the endorsement, but as a matter of custom and general course of dealing; so that if the paper was paid, no further entries need be made and no further charges against Kaufman Brothers. In addition, it is a strong circumstance that the bank in Columbus, Georgia, did not make any investigation of the affairs of a concern in Asheville before taking the paper. Ordinary prudence would have dictated that the bank make an investigation of a concern whose paper it was buying, and contends that no bank would buy outright paper of a concern in a distant city and state without making an investigation of the concern for the purpose of ascertaining if the paper was good. This kind of evidence tended to show that the plaintiff bank did not purchase the paper outright, but took it merely as an agent for collection for Kaufman Brothers. There were other circumstances connected with the transaction favorable to defendants' view. We think the evidence, under all the facts and circumstances of this case, sufficient to be submitted to the jury and borne out by decisions in similar cases: *Worth Co. v. Feed Co.,* 172 N. C., 335; *S. c.,* 173 N. C., 711; *Moon v. Milling Co.,* 176 N. C., 407; *Brooks v. Mill Co.,* 182 N. C., 258; *Mangum v. Grain Co.,* 184 N. C., 181; *Sterling Mills v. Milling Co., ibid.,* 461; *Finance Co. v. Cotton Mills Co.,* 187 N. C., 233; *Bank v. Monroe,* 188 N. C., 446. This whole matter is thoroughly discussed and annotated, including the North Carolina decisions, in 42 A. L. R., p. 487.

The burden of the issue was on plaintiff, and the court below so charged correctly. *Cotton Oil Co. v. R. R.,* 183 N. C., 95; *Hunt v. Eure,* 189 N. C., 482; *McDaniel v. R. R. Co.,* 190 N. C., 474. To be sure, a prima facie case by the proof of the execution of the trade acceptance by defendants, its endorsement by Kaufman Brothers, and the possession of the trade acceptance by plaintiff bank, made out a prima facie case that plaintiff was the holder or purchaser in due course and not for collection. If plaintiff desired an instruction as to the effect of the prima facie evidence, it ought to have submitted prayer for specific instructions.

"Where the instruction is proper so far as it goes, a party desiring a more specific instruction must request it." See N. C. cases Anno. 10 S. E. Digest (N. C. ed.), sec. 256, p. 12551; *Simmons v. Davenport,* 140 N. C., 407; *Gay v. Mitchell,* 146 N. C., 509; *Hardy v. Lumber Co.,* 160 N. C., 113; *Webb v. Rosemond,* 172 N. C., 848; *Lumber Co. v. Lumber Co.,* 176 N. C., 500-2; *Baker v. Winslow,* 184 N. C., 1, 8.

The jury, under proper instructions, found for the defendant. They heard the evidence and found that plaintiff was not the owner of the trade acceptance in due course. On the whole record, we can find

No error.