## PRIDGEN v. BAUGH & SONS CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2782.

E. K. Bryan, of Wilmington, N. C. (Tucker & Proctor, of Whiteville, N. C., and Bryan & Campbell, of Wilmington, N. C., on the brief), for appellant.

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., and Rountree & Carr and George Rountree, of Wilmington, N. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

WADDILL, Circuit Judge. This is an appeal from a decree of the District Court for the Eastern District of North Carolina, at Wilmington, dismissing a bill in equity filed by appellant against appellee, seeking recovery of the sum of $13,000 and interest.

Appellant, Mrs. J. V. Pridgen, the administratrix of the estate of C. C. Pridgen, deceased, instituted suit in equity in the superior court of Columbus county, North Carolina, against appellee, Baugh & Sons Company, which cause was removed to the United States District Court at Wilmington. The amount sought to be recovered represents the value of certain United States government bonds, or the proceeds from the sale thereof, which it is alleged Baugh & Sons Company received, and which were the property of complainant, who contends that the bonds or money were or was embezzled, and that defendant, Baugh & Sons Company, was not a purchaser for value of the bonds, or the money derived from the sale thereof. Defendant's demurrer to the bill of complaint was sustained, and a decree entered by the trial court dismissing the bill, from which decree this appeal was taken.

The bill of complaint filed in the court below set out that complainant in September, 1920, owned two United States Liberty Bonds, of a par value of $1,000 each, numbered 91982 and 91983, and two other Liberty Bonds, of a par value of $5,000 each, numbered 3114 and 3115; that these bonds were deposited for safe-keeping in the Bank of Tabor, a state bank doing business at Tabor, in Columbus county, North Carolina; that complainant was also the owner of another Liberty Bond of the value of $5,000, numbered 3116, which she gave her son to be used as security for a $4,000 loan to be gotten from the bank; that in the town of Tabor was located a mercantile concern, the Tabor Supply Company, which owed Baugh & Sons Company a considerable sum; that N. P. Jennerette was president of both the bank and the supply company, and actively managed the affairs of both concerns; that, shortly after the receipt of the bonds by the bank, the defendant, Baugh & Sons Company, began pressing the supply company for payment, and that the supply company sent defendant a check, drawn on the Bank of Tabor; that when the check was presented to the bank, it gave a cashier's check therefor; that defendant deposited the cashier's check in the Seaboard National Bank of Norfolk, which, in the usual course of business, forwarded it for collection; that when presented to the Bank of Tabor, that bank took it up by giving its draft on the Murchison National Bank at Wilmington, N. C.; that payment of said draft was refused, and defendant was notified; that thereupon defendant sent one of its employees to the Bank of Tabor, which bank turned over to him plaintiff's bonds, with instructions to sell them and pay the draft out of the proceeds of the sale, and then to remit the remainder to the Bank of Tabor, which was done.

The defendant, Baugh & Sons Company, demurred to the complaint, giving as cause for demurrer that the bonds were received from a bank of discount and deposit without notice of a lack of title by the bank, that no fraud or collusion on the part of defendant was alleged, and that in the absence of such fraud or collusion no action could be maintained for the recovery of the value of the bonds. The defendant also filed its answer and amended answer, setting out, among other things, that the bonds alleged to have been converted never came into its possession, but were delivered by the Bank of Tabor to the Seaboard National Bank of Norfolk, Va., to be sold by the last-named bank to pay the draft drawn upon the Murchison National Bank of Wilmington, payment of which had been refused, which was done. The answers set up as further defenses to the action the statute of limitations, and the delivery of certain notes by the Bank of Tabor to the complainant, which were accepted by her in full satisfaction and settlement of the claim made in the complaint.

Upon the foregoing pleadings, the case was tried, and on May 18, 1925, the trial court entered the following decree:

"The demurrer heretofore interposed on behalf of Baugh & Sons Company and overruled by a former judge of this court having been again considered, without objection, and the court being of opinion that the said demurrer should be sustained unless the plaintiff desired to amend her complaint by

alleging facts tending to show that Baugh & Sons Company was not an innocent holder of the bonds described in the pleadings, so that she might so amend, if she desired, so stated, and thereupon counsel for the plaintiff informing the court they were in possession of no further facts in respect to that matter, it is adjudged, ordered, and decreed: That the demurrer be, and it is hereby, sustained, and that this cause be, and it is hereby, dismissed and that all bonds and undertakings entered into herein be, and they are hereby, canceled, and that Baugh & Sons Company recover its costs in this behalf expended."

From this decree plaintiff appealed, assigning error to the court's rulings sustaining defendant's demurrer, and in not holding as a matter of law, upon the facts stated, that the burden was on the defendant, Baugh & Sons Company, to establish by a preponderance of evidence that it was a bona fide purchaser for value and in due course of the bonds or the money derived from the sale thereof, and also in not holding as a matter of law that, under the facts alleged in the complaint, the burden was on the defendant, Baugh & Sons Company, to establish that its debt against the Tabor Supply Company or the Bank of Tabor at the time was actually or reasonably worth in value the amount of plaintiff's bonds, or the proceeds derived from the sale thereof.

The assignments of error briefly ask the reversal of the trial court's action in sustaining the demurrer to the complaint, and in not holding that the burden to establish plaintiff's case was upon the defendant; that is to say, that defendant should, by preponderance of the evidence, have established that it was a bona fide purchaser for value, in due course, of the bonds or money derived from the sale thereof, and that the burden was likewise upon the defendant to prove that its debt, on account of which the proceeds of the sale were applied, was actually, or reasonably, worth the amount of plaintiff's bonds, or the proceeds arising therefrom, applied on defendant's debt.

We are not inclined to accept the views of the appellant in respect to either of the three questions presented for our consideration in the assignments of error. It is true that an innocent purchaser for value, and without notice, of stolen property, other than negotiable instruments, obtains no title, unless the owner has given the vendor the apparent power of sale of such property, but this is not true of purchasers for value and without notice, of stolen negotiable instruments, or of money realized therefrom, from one apparently having the power to sell as to such securities, and purchasers take good title; that is, to securities which are negotiable and pass by delivery, whether money or other negotiable paper, properly indorsed. Purchasers for value and innocent holders of the latter class of property take good title to the same, because of the peculiar character of such property, although the vendor may have acted fraudulently in connection with the sale thereof.

The sale of the class of property first mentioned—that is, where the element of negotiability does not enter—was considered by this court in the comparatively recent cases of Richmond Guano Co. v. W. R. Grace & Co., 284 F. 801, Richmond Guano Co. v. E. I. Du Pont de Nemours & Co., 284 F. 803, and E. I. Du Pont de Nemours & Co. v. Tomlinson et al., 296 F. 634. But in this case we have to do alone with an innocent holder or purchaser for value of negotiable securities, or of funds arising therefrom.

In Lawson v. Weston, 4 Espinasse's Nisi Prius, 56, 58, Lord Kenyon, considering the status at common law of a bona fide holder of money or negotiable paper transferrable by mere delivery, before maturity, taken in due course and for a valuable consideration, said:

"I think the point in this case has been settled by the case of Miller v. Race, in Burrow (1 Burr. 452). If there was any fraud in the transaction, or if a bona fide consideration had not been paid for the bill by the plaintiffs, to be sure they could not recover; but to adopt the principle of the defence to the full extent stated, would be at once to paralize the circulation of all the paper in the country, and with it all its commerce. * * * *"

Justice Metcalf, in Worcester County Bank v. Dorchester, 10 Cush. (Mass.) 488, 491, 57 Am. Dec. 120, 122, states the rule as follows:

"It was once held that in the case of a bill of exchange or promissory note fraudulently put into circulation, the holder must show that he had used due and reasonable caution in taking it. But it has since been definitely adjudged that, if he took it in good faith, he is entitled to recover on it. * * * *"

The Supreme Court of the United States has passed upon the question in several cases. In Murray v. Lardner, 2 Wall. 110, 121 (17 L. Ed. 857), the court had before it the title to certain coupon bonds payable to bearer

stolen from the defendant in error and pledged to the plaintiff in error as security for a loan. The court reviewed the decisions and concluded by saying:

"The possession of such paper carries the title with it to the holder: 'The possession and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession."

In Shaw v. North Pennsylvania R. Co., 101 U. S. 557, 25 L. Ed. 892, the controversy was over an indorsed bill of lading. The court said at page 564:

" * * * They are representatives of money, circulating in the commercial world as evidence of money, 'of which any person in lawful possession may avail himself to pay debts or make purchases or make remittances of money from one country to another, or to remote places in the same country. Hence, as said by Story, J., it has become a general rule of the commercial world to hold bills of exchange, as in some sort, sacred instrument in favor of bona fide holders for a valuable consideration without notice.' Without such a holding they could not perform their peculiar functions. It is for this reason it is held that if a bill or note, indorsed in blank or payable to bearer, be lost or stolen, and be purchased from the finder or thief, without any knowledge of want of ownership in the vendor, the bona fide purchaser may hold it against the true owner. He may hold it though he took it negligently, and when there were suspicious circumstances attending the transfer. Nothing short of actual or constructive notice that the instrument is not the property of the person who offers to sell it; that is, nothing short of mala fides will defeat his right. The rule is the same as that which protects the bona fide indorser of a bill or note purchased for value from the true owner. The purchaser is not bound to look beyond the instrument. * * *"

In this case we are considering only the rights of those buying and selling, or otherwise dealing in, negotiable securities. The defendant, Baugh & Sons Company, was a bona fide purchaser for value, in due course, from a bank of discount and deposit.

The assignments of error to the effect that the burden of proof was upon the defendant to show that it was a purchaser for value, and that the existing indebtedness did not constitute valuable consideration, are not well taken. On the first proposition, in Hotchkiss v. National Shoe & Leather Bank, 21 Wall. 354, 22 L. Ed. 645, involving a controversy over the title to a bond stolen from the owner and pledged, the court said at page 359:

"The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or wilful ignorance, and the burden of proof lies on the assailant of the title"—citing Murray v. Lardner, 2 Wall. 110, 121 (17 L. Ed. 857), supra.

On the second proposition, the North Carolina Negotiable Instruments Act (section 3005, Consolidated Statutes), which is as follows, strictly applies:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

In Murchison Nat. Bank v. Dunn Oil Mills Co., 150 N. C. 718, 723, 64 S. E. 885, 887, Justice Hoke states the rule respecting the value of pre-existing debts as follows:

"There was evidence, however, on the part of plaintiff, tending to show that plaintiff bank acquired and holds this draft as purchaser for value and without notice, the existing indebtedness constituting value by express provision of statute. Revisal 1905, § 2173" (citing Manufacturing Co. v. Summers, 143 N. C. 103, 55 S. E. 522).

For the reasons stated, we are of the opinion that the judgment of the trial court should be affirmed, with costs to the appellee.

Affirmed.