BAKER-CAMMACK TEXTILE CORPORATION v. GURNEY P. HOOD, COMMISSIONER OF BANKS OF THE STATE OF NORTH CAROLINA, AND E. C. McLEAN, AGENT AND CONSERVATOR OF NORTH CAROLINA BANK AND TRUST COMPANY.

(Filed 20 June, 1934.)

1. **Banks and Banking C c: Bills and Notes D d—Bank of deposit held collecting agent for checks drawn on foreign banks.**

   Under a valid emergency statute a bank restricted withdrawals of deposits to five per cent of the depositors' balances on the preceding day and thereafter accepted deposits without restrictions as to withdrawals. On the day before the bank invoked the emergency statute a depositor deposited checks drawn on foreign banks, using the bank's deposit slip which expressly stipulated that the bank accepted the checks as collecting agent and that the checks were credited to the depositor subject to final payment in cash or solvent credits. The bank had theretofore allowed the depositor to check against uncollected items, but the depositor was solvent and the bank had always charged returned checks to the depositor's account. *Held,* in respect to the checks drawn on foreign banks the bank of deposit was collecting agent only, and the relationship of debtor and creditor did not exist until the foreign checks had actually been collected and the deposit of such checks was not made until that time.

2. **Estoppel C a—Acts of plaintiff held not to have resulted in loss to adverse claimants, and plaintiff was not estopped.**

   Under a valid emergency statute a bank restricted withdrawals of deposits to five per cent of the depositors' balances on the preceding day and accepted deposits thereafter without restrictions as to withdrawals.

TEXTILE CORP. *v.* HOOD, COMR. OF BANKS.

A depositor of checks drawn on foreign banks demanded the five per cent on the whole balance credited to him, although he knew that some of the checks had not been collected. Thereafter, the depositor tendered the bank the five per cent withdrawn by him on checks that were uncollected at the time the emergency statute was invoked, and claimed the total amount thereafter collected on such checks as a preference in the bank's assets upon its later receivership upon the ground that as to such checks the deposit was not made until the checks were collected, at which time the bank was operating on an unrestricted basis. *Held*, the depositor was not estopped by his withdrawal of the five per cent on the whole balance credited to him from asserting his claim for the full amount of the checks later collected, since his act in so withdrawing the five per cent resulted in no loss to the bank and did not prejudice the rights of general depositors and creditors of the bank.

3. **Banks and Banking H e—Deposit made after bank had resumed business on unrestricted basis after invoking emergency restrictions on withdrawals entitles depositor to a preference.**

Under a valid emergency statute a bank restricted withdrawals of deposits, and thereafter accepted deposits without restrictions as to withdrawals. After it had resumed business and was accepting deposits without restrictions it collected from foreign banks certain checks a depositor had previously deposited with it as collecting agent. Thereafter it was placed in the hands of the statutory receiver for liquidation. *Held*, the depositor was entitled to a preference in its assets for the amount so deposited by him while it was receiving deposits on an unrestricted basis, the emergency statute constituting such deposits deposits in the nature of a trust fund.

APPEAL by defendant from *Shaw, Emergency Judge,* at January Term, 1934, of ALAMANCE. Affirmed.

"The parties hereto, acting by and through their attorneys of record, do hereby agree that this case shall be submitted to the court, without a jury, upon the record, and upon the following statement of facts, which is hereby approved and agreed to, to wit:

1. The plaintiff is a manufacturing corporation, organized and existing under the laws of the State of Louisiana, but has its principal office and place of business in the city of Graham, Alamance County, North Carolina.

2. The North Carolina Bank and Trust Company (hereinafter referred to as the bank) is a banking corporation, organized and existing under the laws of the State of North Carolina; the defendant Gurney P. Hood is Commissioner of Banks of the State of North Carolina, and the defendant E. C. McLean is agent and conservator in charge of the liquidation of the North Carolina Bank and Trust Company, as hereinafter set out.

3. Upon opening for business on 3 March, 1933, the bank limited withdrawals by any depositor to five per cent of the depositor's balance

as shown by the books of the bank at the close of its business on the previous day. At a later hour on 3 March, 1933, and after the enactment of chapter 103, of the 1933 Public Laws of North Carolina, pursuant to the terms and provisions of said act, the bank voluntarily subjected itself to the orders and control of Gurney P. Hood, Commissioner of Banks of the State of North Carolina. Under an order thereafter issued by Gurney P. Hood, Commissioner of Banks as aforesaid, with the approval of the Governor of North Carolina, the bank was authorized to and did indefinitely extend and postpone all payments to both time and demand depositors (other than fully secured depositors and claims preferred by law) in excess of five per cent (5%) of the actual collected balances due and owing such depositors at the close of business on 2 March, 1933. The same order provided that the bank might thereafter receive any deposits, and that the new deposits received by it on or after 3 March, 1933, should not under any circumstances be subjected to any limitations as to payment or withdrawal.

4. For a long time prior to 3 March, 1933, the plaintiff had carried a checking account in the commercial department of the bank. At various times on and immediately prior to 3 March, 1933, the plaintiff deposited with the bank certain checks. Each of said deposits was evidenced by and made upon a deposit slip, the form and words of which are attached as Exhibit 'A.' There is also attached as Exhibit 'B,' a statement showing the drawer of each of the checks above mentioned, the amount thereof, the date on which same was deposited, the name of the drawee bank, the name of the bank to which same was sent by the bank for credit to its account therein, the date of payment by the drawee bank, and the date on which the proceeds therefrom were paid to the bank, or finally credited to its account in its correspondent bank. Each of said correspondent banks is now and was at all times herein mentioned amply solvent.

5. Upon the checks received from the plaintiff for deposit the bank required the plaintiff's endorsement. At the end of each day, the amount of checks deposited by the plaintiff on that day was credited to its account, and was thereupon immediately subject to withdrawal by the plaintiff. It was not the custom of the bank to advise or notify the plaintiff at any time of the fact that it had actually collected a check so handled, but in the event such a check was not paid, the bank would return it to the plaintiff, charge the amount thereof against the plaintiff's account, and notify the plaintiff accordingly.

6. The plaintiff is now and was at all times herein mentioned amply solvent, which fact was known to the bank. There was no contract or agreement between the plaintiff and the bank in connection with said deposits and account, except as shown by the facts herein set out, and ex-

cept such, if any, as may be implied therefrom, or implied by law. The amount to the credit of the plaintiff's account, in the bank at the close of business on 2 March, 1933, was $8,447.72, five per cent of which was thereafter withdrawn by the plaintiff at a time when it knew of the restriction which had been placed on its account, and also knew that at least several of the checks included within said $8,447.72 had not been collected. In addition to the checks listed on the statement hereto attached as Exhibit 'B' said $8,447.72 included checks and drafts totaling $3,079.42, which were deposited in the manner hereinbefore set out, but which, subsequent to 3 March, 1933, were returned unpaid to the bank, and then returned by the bank to the plaintiff, and the amounts of which were charged against the plaintiff's restricted account. The plaintiff has tendered to the defendants five per cent of the uncollected items, totaling $3,079.42, and five per cent of the items collected on or after 3 March, 1933.

7. On 20 May, 1933, Gurney P. Hood, Commissioner of Banks of the State of North Carolina, took possession of the bank and all of its assets and business for the purpose of liquidation, such possession was taken and has been retained by him in the manner provided by law, and E. C. McLean is the duly appointed, qualified, and acting agent and conservator in charge of the liquidation of the bank. The plaintiff made demand upon the defendants and each of them for the payment, as a preferred claim, of the balance of the proceeds derived from the checks listed on the statement hereto attached as Exhibit 'B,' but the defendants refused to pay the same, or any part thereof, and denied that the plaintiff is entitled to any preference in the distribution of the assets of the bank. Approved and consented to, this 29 January, 1934. John S. Thomas, attorney for plaintiff. Brooks, McLendon & Holderness, attorneys for defendants."

"Exhibit 'A,' deposited with North Carolina Bank and Trust Company, subject to the following regulations: In receiving items for deposit or collection, this bank acts only as depositor's collecting agent, and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents, nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank, or its correspondents, may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited.

Burlington, N. C., ...... .... . ..................... , 193 ... .

|  | Dollars | Cents |
|---|---|---|
| Currency..... . .......................... ............ ... ........ ....... | ................. . | ....... ..... .... |
| Silver  ................... ................ .. . .. . . . . | .......... . . .. | .............. |
| Gold ............. .. . ............ ... ... ................ .. . .. .... .. | .............. . . | .... ....... .... |
| Checks, as follows: .. ....... .... . . .. .................. . ...... | .............. ... | . . ....... ..... |
| .......... . ................. ............... ......... .... .. .. | ... ........ . .... | ........ . .... |
| .............. ..... ... ........ .......... ............ ......... ............ .. | ..............: .... | .. . . .... .. |
| Total $ | ................. | ............... |

See that all checks and drafts are endorsed."

Exhibit "B," list of items deposited by Baker-Cammack Textile Corporation, for sake of brevity, are not set forth.

The judgment of the court below is as follows: "This cause coming on to be tried at the January Term, 1934, of the Superior Court of Alamance County, before his Honor, Thomas J. Shaw, emergency judge, assigned to and holding said court, upon motion, E. C. McLean was substituted as a party defendant in lieu of I. B. Grainger as agent and conservator of the North Carolina Bank and Trust Company. Thereupon, by agreement of the parties, this cause was submitted to the court, without a jury, upon the record and an agreed statement of facts, and the court, after consideration thereof and after hearing arguments of counsel, being of the following opinion, to wit: That because of the terms of the regulations printed on the deposit tickets upon which the plaintiff made its deposits of checks in the North Carolina Bank and Trust Company, such deposits were deposits for collection, creating the relation of principal and agent between the plaintiff and the bank pending payment of said checks in cash or solvent credits; that upon the payment of said checks by the drawee bank and the proceeds therefrom being finally credited to the account of the North Carolina Bank and Trust Company in one of its solvent correspondent banks, said relation of principal and agent terminated and the relation of debtor and creditor was created; that the plaintiff is entitled to a preferred claim against the assets of the North Carolina Bank and Trust Company in the amount of $173.93, representing the aggregate amount of the items collected by the North Carolina Bank and Trust Company on or after 3 March, 1933, to wit, $399.32, less the five per cent thereof

($19.96) which the plaintiff has already received, and also less the five per cent of $3,079.42 ($153.97), which the plaintiff received on items deposited prior to 3 March, 1933, which were returned unpaid, and that the plaintiff is not estopped to claim said preference because of its withdrawal of five per cent of its 2 March, 1933, book balance, as set out in the agreed statement of facts. It is therefore ordered, adjudged, and decreed that the plaintiff have and recover of the defendants, as a preferred claim against the assets of the North Carolina Bank and Trust Company, the sum of $173.93, and that the defendants pay the costs of this action. It having been agreed by the attorneys for the parties hereto that judgment might be rendered out of term, this judgment is so signed, and the judgment heretofore signed in this cause is vacated and declared null and void."

The defendants excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.

*John S. Thomas for plaintiff.*
*Brooks, McLendon & Holderness for defendants.*

CLARKSON, J. The judgment of the court below, that "plaintiff have and recover of the defendants, as a preferred claim against the assets of the North Carolina Bank and Trust Company, the sum of $173.93," must be sustained. Under chapter 103, Public Laws of 1933, the North Carolina Bank and Trust Company limited withdrawals by any depositor, to five per cent of deposits at the close of business on 2 March, 1933. The plaintiff was solvent and its checking account at that time was $8,447.72—five per cent of which was withdrawn in accordance with the restriction. On this appeal, the only items now in controversy are the following: $42.50 check drawn on First National Bank of Arcadia, La.; $225.00 check drawn on First National Bank of Appleton, Wis.; $87.27 check drawn on Anglo-American National Bank of San Francisco, and $44.55 check drawn on Central Bank and Trust Company of Peoria, Ill., totaling $399.32, less five per cent on items of deposit as set forth below in the judgment, leaving $173.93. These items were collected by the bank after it had ceased to operate, except upon a restricted basis and after the plaintiff had withdrawn five per cent of its prerestricted book balance, but before the Commissioner of Banks took possession of the bank for the purpose of liquidation.

The judgment of the court below, in part, is as follows: "That the plaintiff is entitled to a preferred claim against the assets of the North Carolina Bank and Trust Company in the amount of $173.93, representing the aggregate amount of the items collected by the North Carolina Bank and Trust Company on or after 3 March, 1933, to wit,

$399.32, less the five per cent thereof ($19.96) which plaintiff has already received, and also less the five per cent of $3,079.42 ($153.97), which the plaintiff received on items deposited prior to 3 March, 1933, which were returned unpaid, and that the plaintiff is not estopped to claim said preference because of its withdrawal of five per cent of its 2 March, 1933, book balance, as set out in the agreed statement of facts."

The full amount to the credit of the plaintiff's account, $8,447.72, in the bank at the close of business on 2 March, 1933, had not been collected. In addition to the checks listed on the statement hereto attached as Exhibit "B," said $8,447.72 included checks and drafts totaling $3,079.42, which were deposited, but which, subsequent to 3 March, 1933, were returned unpaid to the bank, and then returned by the bank to the plaintiff, and the amounts of which were charged against the plaintiff's restricted account. The plaintiff has tendered to the defendants five per cent of the uncollected items, totaling $3,079.42, and five per cent of the items collected on or after 3 March, 1933.

When the checks and drafts were deposited by plaintiff, the following was in the contract, made with the North Carolina Bank and Trust Company, in part: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent, and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. . . . It may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

The first question involved: Did the checks deposited in the bank under the facts as agreed upon, become the property of the bank, or, pending collection, were they held by the bank as agent for the plaintiff? We think they were held by the bank as agent for the plaintiff. We think under all the facts and circumstances of this case, that the bank by express contract was an agent for collection, the contract in clear language so states. In *Worth Co. v. Feed Co.*, 172 N. C., 335 (342), citing numerous authorities, this Court said: "The rule prevails with us, and it is supported by the weight of authority elsewhere, that if a bank discounts a paper and places the amount, less the discount, to the credit of the indorser, with the right to check on it, and reserves the right to charge back the amount if the paper is not paid, by express agreement or one implied from the course of dealing, and not by reason of liability on the indorsement, the bank is an agent for collection and not a purchaser." *Temple v. La Berge*, 184 N. C., 252; *Sterling Mills v. Milling Co.*, 184 N. C., 461; *Bank v. Rochamora*, 193 N. C., 1; *Denton v. Milling Co.*, 205 N. C., 77; 42 A. L. R., p. 494.

TEXTILE CORP. *v.* HOOD, COMR. OF BANKS.

The North Carolina Bank and Trust Company, after its restriction at the close of business on 2 March, 1933, collected the checks in controversy. If these checks had been deposited after the restriction, the proceeds would have been plaintiffs'. The order provided "that the bank might thereafter receive any deposits and that the new deposits received by it on or after 3 March, 1933, should not under any circumstances, be subject to any limitations as to payment or withdrawal." The bank after the restriction, collected the checks for plaintiff and on its check or demand, the agent bank was bound to pay the plaintiff. The bank had not purchased them, but took them to collect them like any other agent, and on demand the agent bank was bound to pay the plaintiff. The defendants have refused to pay the proceeds of these checks which belonged to plaintiff. The court below properly held that they were preferred claims against the assets of the bank.

The second question involved: Is a depositor in a bank in process of liquidation who withdrew from the bank five per cent of its book balance at a time when it knew that the bank had limited withdrawals to five per cent of its depositors' actual collected balances, and also knew that several of the items included within its book balance had not been collected, estopped as against the other creditors of the bank from thereafter claiming that certain of the items were not actually collected until a later date? We think not, under the facts and circumstances of this case.

The plaintiff was carrying a checking account with the North Carolina Bank and Trust Company for their mutual benefit. No interest was paid plaintiff on its daily balances. The bank required plaintiff's endorsement and allowed it to check on the deposits, but it was not the custom of the bank to notify plaintiff when the checks so handled were actually collected, but in the event that such checks were not paid, the bank would return them to the plaintiff and charge the amount against the plaintiff's account and notify the plaintiff accordingly. The plaintiff was solvent and this was known to the bank. The whole matter was *in fieri.* It would be indeed hard measure to say plaintiff was estopped and be held to any strict accountability when he, under the circumstances here narrated, the bank going on a restricted basis, in these hard times, could only withdraw five per cent on $100.00 and this done by a legislative act and without his consent. The plaintiff tendered back the five per cent to defendants.

In 10 R. C. L., "Estoppel," at page 697-8, section 25, is the following: "The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he

will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party. Its whole office is to protect him from a loss which, but for the estoppel, he could not escape. Consequently, the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed." *Trust Co. v. Wyatt,* 191 N. C., 133 (136): In *Meyer v. Reaves,* 193 N. C., 172 (178), speaking to the subject: " 'Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another.' 16 Cyc., p. 785; *Holloman v. R. R.,* 172 N. C., 376; *Cook v. Sink,* 190 N. C., at p. 626. See *Freeman v. Ramsay,* 189 N. C., 790; 21 C. J., p. 1202." *Thomas v. Conyers,* 198 N. C., 229 (234). We do not think under the facts and circumstances of this case, plaintiff is estopped.

The third question involved: Where such checks were deposited in a bank as agent for collection, which availed itself of the privileges of chapter 103, of the 1933 Public Laws of North Carolina, between depositing of the checks for collection and the collection of the checks, and after the collection of the checks, the bank was taken over by the Commissioner of Banks for the purpose of liquidation, is the plaintiff entitled to a preferential claim against the assets of the bank? We think so.

Before the transactions in controversy took place, the bank was not on a restricted basis and was not in liquidation. The restriction subsequently "tied up" these checks and did away with the contract between the plaintiff and the North Carolina Bank and Trust Company. It took them as agents for collection and when collected, plaintiff was entitled to the proceeds and under the peculiar factual situation, defendants cannot now contend that when collected, the principle of debtor and creditor would prevail. The peculiar legislation contrary to plaintiff's agreement fixed it so that plaintiff could not get this fund collected by the North Carolina Bank and Trust Company, as its agent. The factual situation and agreement distinguishes this case from those cited by defendants. The North Carolina Bank and Trust Company collected the checks as plaintiff's agent and the fund under the facts and circumstances of this case, was a trust fund and when the Commissioner of Banks took over the North Carolina Bank and Trust Company, it took it *cum onere.* For the reasons given, the judgment of the court below is

Affirmed.