THE BANK OF BEAUFORT, BEAUFORT, N. C. (AND W. A. ALLEN, LIQUIDATING AGENT OF THE BANK OF BEAUFORT, AND MRS. D. M. DENOYER, ADDITIONAL PARTIES PLAINTIFF), V. THE COMMERCIAL NATIONAL BANK OF RALEIGH, N. C. (AND L. A. LENTZ, RECEIVER OF COMMERCIAL NATIONAL BANK OF RALEIGH, N. C., ADDITIONAL PARTIES DEFENDANT).

(Filed 31 October, 1934.)

1. **Trial D a—On motion of nonsuit all the evidence is to be considered in the light most favorable to plaintiff.**

Upon a motion as of nonsuit, all the evidence, whether offered by plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom, and the motion should be denied if there is any sufficient evidence on the whole record to warrant a recovery by plaintiff. C. S., 567.

BANK v. BANK.

**2. Evidence N b—**

An essential fact may be proven by circumstantial evidence.

**3. Brokers C d—Evidence that bonds given to broker were the same that broker deposited with bank with draft for collection held sufficient.**

In this case there was evidence that a customer of a bank, in accordance with an agreement negotiated through the bank, sent two North Carolina bonds to a brokerage firm for sale at a fixed price, and that on that day the brokerage firm deposited in a local bank two North Carolina bonds with draft attached drawn on a New York bank in the sum agreed upon for the sale of the bonds: *Held*, the evidence was sufficient to be submitted to the jury in the customer's action to recover the proceeds of the draft as to the identity of the customer's bonds and the bonds deposited by the brokers.

**4. Same: Banks and Banking C c — Evidence that bank received draft from broker as collecting agent held sufficient to be submitted to jury.**

Evidence that a brokerage firm deposited in a local bank a draft drawn on a bank in another state, using the local bank's regular deposit slip, which gave it the right to charge the item back to the firm's account if not collected, *is held* sufficient to sustain the jury's finding that the local bank was an agent for collection of the draft and not a purchaser thereof in an action by customer of the brokerage firm to recover the proceeds of the draft.

**5. Banks and Banking H e—Evidence that bank was trustee of proceeds of draft, entitling owner to preference held sufficient for jury.**

Evidence that a bank received a draft from a brokerage firm for collection, and that prior to the collection of the draft, plaintiff's agent, upon the insolvency of the brokerage firm, notified the bank that the draft represented the purchase price of plaintiff's bonds sold by plaintiff through the brokerage firm, and that the proceeds of the draft belonged to plaintiff, *is held* sufficient to sustain the jury's finding that upon the collection of the draft the bank held the proceeds thereof as trustee for the plaintiff, the plaintiff being the owner thereof and not the brokers, and the bank had no right to credit the draft before it had been collected to a note due the bank by the brokerage firm, and upon the bank's later insolvency plaintiff was entitled to a preference in its assets for the amount collected on the draft by the bank.

APPEAL by defendant from *Daniels, J.*, and a jury, at June Term, 1934, of CARTERET. No error.

This is a civil action, originally brought by the Bank of Beaufort against the Commercial National Bank of Raleigh, to recover the sum of $2,080, the proceeds from the sale of two North Carolina State Highway Serial Bonds, No. 55480 and No. 55496. After the action was commenced, both the plaintiff bank and defendant bank went into liquidation and the receiver of each made parties.

During the trial of the action before his Honor, F. A. Daniels, judge presiding, and a jury, at the June Term, 1934, of the Carteret County

Superior Court, it developed that Mrs. D. M. DeNoyer was the owner of the two bonds in question prior to their sale, and she was, by consent of parties plaintiff and defendant, made a party plaintiff.

The following issues were submitted to the jury and their answers thereto: "(1) Were the bonds attached to the draft deposited with the Commercial National Bank, the identical bonds sent by the Bank of Beaufort to Durfey & Marr for sale for the benefit of Mrs. D. M. DeNoyer? A. 'Yes.' (2) Did the Commercial National Bank receive said draft as purchaser or for collection? A. 'For collection.' (3) Was the Commercial National Bank trustee for Mrs. DeNoyer for the proceeds of said bond? A. 'Yes.' "

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Julius F. Duncan for plaintiff.*
*Jones & Brassfield and C. R. Wheatley for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.

On motion for judgment as in case of nonsuit, the evidence is to be taken in the light most favorable to the plaintiff and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

An exception to a motion for judgment as in case of nonsuit taken at the close of the plaintiff's evidence and renewed by defendant after the introduction of his own evidence, does not confine the appeal to the plaintiff's evidence alone and a judgment will be sustained under the second exception, if there is any evidence on the whole record that plaintiff is entitled to recover.

The defendants contend: "(a) There was no evidence to submit to the jury that the two North Carolina bonds attached to the draft drawn by Durfey & Marr on 9 September, 1930, and deposited in the Commercial National Bank of Raleigh were the same bonds forwarded by mail to Durfey & Marr by the Bank of Beaufort on the same day.

"(b) The evidence does not disclose that the Commercial National Bank of Raleigh accepted the draft drawn by Durfey & Marr on 9 September, 1930, and to which was attached two North Carolina State Bonds for collection, but on the other hand became the owner of the draft."

It is too well settled to need cite authorities that a fact can be proved by circumstantial as well as direct evidence. J. A. Hornaday, former cashier of the Bank of Beaufort, testified to the effect: That a client or customer of the bank, D. M. DeNoyer, on 6 September, 1930, came to the bank with two North Carolina Bonds of $1,000 each, to sell same. He inquired of Durfey & Marr, who were brokers in Raleigh, North Carolina, to see what he could get for the bonds. They gave a price of $1,040 and accrued interest—or $2,080 for the two bonds. This information Hornaday gave his customer, who expressed his willingness to sell the bonds at that price.

On 9 September, Hornaday sent the bonds by mail to Durfey & Marr. He learned that the brokers had gone into receivership. He went to Raleigh and, after going to the office of the brokers, he then went to see E. B. Crow, vice-president and cashier of the Commercial National Bank, of Raleigh, North Carolina. This was on or about 11 September, 1930. Hornaday told him that these bonds had been sent to Durfey & Marr by the Bank of Beaufort and they belonged to their client or customer. "Mr. Crow told me that Durfey & Marr had brought two North Carolina Bonds to the bank, together with other security, and had drawn a draft on some bank in New York, with the securities attached."

E. B. Crow testified that Durfey & Marr "made a deposit on the 9th, of $2,184.12, and deposited $2,000 worth of bonds. . . . On the bottom of the deposit slip is the following printed matter: 'Depositor agrees that all items for credit or for collection are received by this bank subject to the conditions printed on the back of this slip.' There is nothing on the back of this slip. . . . I would not now say that this deposit slip covers these bonds. When an item is accepted for collection there is print on the reverse side of the deposit slip. The carbon copy would have printing on it. It was the form that was in use by all the banks, giving them the right to charge back an item."

We think that the evidence is sufficient to have been submitted to the jury that the draft deposited with the Commercial National Bank with bonds attached were the identical bonds sent by Hornaday to Durfey & Marr, for sale for the benefit of the plaintiff, Mrs. D. M. DeNoyer.

Did the Commercial National Bank receive said draft as purchaser or for collection? The jury answered "For collection," and we think the evidence ample to sustain this issue.

The "depositor's slip," on its face, stated "Depositor agrees that all items for credit or for collection are received by this bank subject to the conditions printed on the back of this slip." Nothing was on the back of the slip, but E. B. Crow testified: "It was the form that was in use by all the banks, giving them the right to charge back an item."

In *Textile Corp. v. Hood, Comr. of Banks*, 206 N. C., 782 (788), speaking to the subject: "The first question involved: Did the checks

deposited in the bank under the facts as agreed upon become the property of the bank, or, pending collection, were they held by the bank as agent for the plaintiff? We think they were held by the bank as agent for the plaintiff. We think under all the facts and circumstances of this case that the bank, by express contract, was an agent for collection; the contract in clear language so states. In *Worth Co. v. Feed Co.,* 172 N. C., 335 (342), citing numerous authorities, this Court said: 'The rule prevails with us, and it is supported by the weight of authority elsewhere, that if a bank discounts a paper and places the amount, less the discount, to the credit of the endorser, with the right to check on it, and reserves the right to charge back the amount if the paper is not paid, by express agreement or one implied from the course of dealing, and not by reason of liability on the endorsement, the bank is an agent for collection and not a purchaser.' *Temple v. LaBerge,* 184 N. C., 252; *Sterling Mills v. Milling Co.,* 184 N. C., 461; *Bank v. Rochamora,* 193 N. C., 1; *Denton v. Milling Co.,* 205 N. C., 77; 42 A. L. R., p. 494."

Was the Commercial National Bank trustee for Mrs. DeNoyer for the proceeds of said bonds? The jury answered "Yes" and we think the evidence ample to sustain this issue.

Hornaday testified in regard to the bonds: "I learned that Durfey & Marr had failed. . . . They belonged to us until sold. . . . I went after them and went in the office of Durfey & Marr and called for them. I then went to the Commercial National Bank and got an audience with Mr. Crow, who was vice-president and cashier of that institution. He told me that the bonds had been accepted for collection, but later he had credited them to the account of Durfey & Marr and applied the proceeds to the indebtedness of that firm. I asked him if he had received the proceeds from New York and he said 'No.' . . . I asked where the bonds had been sent and he said to the Hanover National Bank. In consequence of that information, I wired the Hanover National Bank advising the conditions under which the bonds were sent. . . . At that time I made inquiry of Mr. Crow as to any return on the draft from the bank to which he said he had sent it. He said there were no returns on it. . . . At the time I talked with Mr. Crow, he told me that the bonds were transmitted with the draft attached, and that the draft was drawn by Durfey & Marr. . . . He said that it was taken for collection, but later credited on the indebtedness of Durfey & Marr, Mr. Crow told me that the draft was deposited in the bank either late in the evening or the next morning, and the following afternoon they gave credit for it. I do not recall whether it was the afternoon of the 9th, or the morning of the 10th. I do not recall that I saw Mr. Crow but one time. He told me that he had later transferred the item from a collection to a credit."

The bonds were sent to Durfey & Marr as brokers, or agents, to sell. Black's Law Dictionary (3d Ed.), at p. 252, defines Broker as follows: "An agent employed to make bargains and contracts between other persons, in matters of trade, commerce, or navigation, for a compensation commonly called 'brokerage.' Story Ag., sec. 28."

The evidence was to the effect that as agents for Mrs. DeNoyer, through the Bank of Beaufort and the brokers, the bonds were sold by the brokers and draft drawn, with the bonds attached, on the Hanover National Bank. The draft, with the bonds attached, was deposited for collection in the Commercial National Bank of Raleigh, North Carolina, and before the proceeds of this draft was collected for Durfey & Marr, agents, the Commercial National Bank, on 10 September, 1930, credited same on a note of Durfey & Marr, which was at that time due or past due. The Commercial National Bank knew Durfey & Marr were insolvent and on 11 September it had notice before the draft, with the bonds attached, was paid, that the proceeds of the bonds belonged to Mrs. DeNoyer. In fact, Hornaday testified: "I asked him if he had received the proceeds from New York and he said 'No.' . . . There were no returns on it."

Hornaday further testified: "In sending the bonds, I was acting under instructions of the bank's customer and the bank never acquired the bonds except as agent. As I understood, the Bank of Beaufort was acting as agent of Mr. DeNoyer in selling the bonds and never paid one dollar for them."

According to the evidence on the part of plaintiff, the draft, with the bonds attached, had not been paid when notice was given to the Commercial National Bank by Hornaday. The bank was an agent for collection and the draft, with the bonds attached, was not the property of the bank when the notice was given. The bank, by appropriating the proceeds of the draft to its own use, became a trustee *ex maleficio*.

In 1 Mechem on Agency (2d Ed.), part of sec. 1350· (pages 988-989-990), is the following: "It may be stated as a general principle that, wherever property or funds have come into the hands of the agent impressed with a trust in favor of the principal, such property or funds may be followed by the principal as long as they can be identified until they come into the possession of a *bona fide* purchaser for value without notice. So, if the property or funds have been disposed of or reinvested by the agent, the trust will in equity adhere to the proceeds in his hands in the same manner and to the same extent as to the original estate; that is, as long as they can be traced and until they are acquired by a *bona fide* purchaser without notice. It does not matter that the legal title to the fund may have changed. Equity will follow it through any number of transmutations and preserve it for the owner so long as it can be identified. And if it cannot be identified by reason of being

mingled with the funds or property of the agent, then the principal, though he may not be able to identify his fund specifically, will be entitled to a charge upon the whole mass to the extent that the trust fund is traceable into it, and has operated to enhance it. . . . In case of the bankruptcy of the agent, neither the property nor the money would pass to his assignees for general administration, but would be subject to the paramount claim of the principal." *Bank v. Crowder,* 194 N. C., 312; *Wood v. Bank,* 199 N. C., 371.

We see no error in the court below in refusing to give defendant's prayer for instruction or in the charge as given.

In the judgment of the court below we find

No error.